[Civ. No. 2564.   Third Appellate District.—February 28, 1923.]

## W. D. COLLINS et al., Appellants, v. MANOOG H. EKSOOZIAN, Respondent.

[1] VENDOR AND VENDEE — DEFAULT IN PAYMENT OF TAXES — FORFEITURE—ESTOPPEL.—A vendor under a contract of sale of real property of which time is of the essence is estopped from claiming a forfeiture of the vendee's rights for default in the payment of taxes, where it was arranged that the tax bill should be mailed to the vendee in the vendor's care, the vendee being a foreigner and unfamiliar with the English language, and the vendor upon receiving the bill withheld it from the vendee.

[2] FORFEITURE—ENFORCEMENT.—The law does not favor forfeitures and a party should not be divested of valuable rights by way of forfeiture for default in complying with the provision of a contract by which those rights have been acquired unless it is clearly made to appear that the other party to the contract has suffered or will suffer serious detriment or damage by reason of such default, or unless it is made to appear that the default was intentional or willful.

[3] VENDOR AND VENDEE — FORFEITURE — DEFAULT IN PAYMENT OF TAXES—EVIDENCE—TIME OF PAYMENT.—In an action to declare the rights of a vendee under a contract of sale of real property forfeited for default in the payment of taxes, testimony of the vendee that the vendor did not tell him when the taxes were payable was competent where the vendee was a foreigner, unfamiliar with the English language, and it was arranged that the tax bills should be sent to the vendee in the vendor's care.

[4] ID.—EVIDENCE—PAYMENT OF TAXES AFTER DELINQUENCY—TESTIMONY OF TAX COLLECTOR.—In such action, testimony of the tax collector that the taxes had finally been paid, although after they had become delinquent, was competent and pertinent to the issues

of the case, where the answer alleged that the defendant paid the taxes and penalties upon learning of the delinquency.

[5] ID.—EVIDENCE—ORAL TESTIMONY AS TO NONPAYMENT OF TAXES—PAROL EVIDENCE RULE NOT VIOLATED.—The contention in such action that the oral testimony regarding the matter of the nonpayment of the taxes by defendant within the time prescribed by law tended to vary the terms of the written contract is not tenable, since the testimony was intended only to show such an excuse for failure to comply within the time required with a vital provision of the agreement as would or might be sufficient to entitle the vendee in equity to be relieved of the consequences thereof.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Karl A. Machetanz for Appellants.

Earl A. Bagby for Respondent.

HART, J.—The plaintiffs instituted this action for the purpose of securing a decree foreclosing, or declaring forfeited, all rights acquired by the defendant under a written contract whereby the former agreed to sell and convey to the defendant and the latter agreed to purchase from said plaintiffs a certain tract of land situated in Tulare County.

The defendant was given judgment, from which the plaintiffs appeal on a bill of exceptions.

The agreement was entered into on the twenty-second day of September, 1919, and contains, among others, the following provisions and terms: That the purchase price of the land, to wit, the sum of ten thousand seven hundred dollars, is to be paid on or before five years from the date of the agreement, the interest thereon (seven per cent per annum) payable annually; that, upon the payment by the defendant of the principal and interest, as so provided, the plaintiffs are to execute and deliver to the defendant a deed conveying to him a good and complete title to the said real property, free and clear of all encumbrances; that the plaintiffs were to "dig a sufficient pit where the present well is on said land to present water level and will install the four-inch centrifugal pump which he now has, together with a

seven and one-half power motor, at his own cost and expense,'' all of which work was to be done and finished before the first day of March, 1920; that said plaintiffs were to lay twelve hundred feet of ten-inch cement pipe from the said pit ''up the east side line of said land to the north line thereof''; that said pipe-line ''is to be completed and capable of running water through the same from the said pit to the said north line of said land on or before the first day of March, 1920,'' all said work to be done at the expense of said plaintiffs. It is further agreed that, on or before the first day of February, 1921, the defendant should level and prepare the north twenty acres of said land for the planting of Thompson seedless grapes, said leveling to be such that water ''will run from the north to the south lines of said land,'' and that he should plant such grape-vines ''on said land on or before the first day of April, 1921, and after said grape-vines are planted, he will take care of, irrigate, and cultivate said grape-vines at the seasonable times during the year in a careful and husband-like manner,'' etc. It is further provided that the defendant, for a like purpose, should, on or before the first day of February, 1920, likewise level and put in shape the south twenty acres of said land, plant the same to like grape-vines, and take care of the same as above indicated. The defendant was to have immediate possession of said real property and was to pay all state, county, school district, and other taxes levied or imposed on said property, and ''said second party agrees not to allow the same or any part thereof to become delinquent.'' The plaintiffs agreed to pay the taxes for the years 1919 and 1920.

The agreement further provided that failure by the defendant to comply with the foregoing terms and provisions thereof or default by him in the payment of the agreed principal of the purchase price of the premises and the interest on said principal as prescribed in the agreement was to have the effect of releasing the parties of the first part (plaintiffs) from ''all obligations in law or in equity to convey said real property,'' or any part thereof, to the defendant; that any rights acquired by the defendant under and by virtue of the agreement should thereupon cease and the first party invested with the right to re-enter said property and remove all persons therefrom and take possession of the

same. It is also provided that "time is of the essence of this agreement, and of each covenant thereof."

The complaint, *inter alia*, charges that the defendant defaulted in the payment of the taxes assessed against the property in question for the years 1920-21; that the same became delinquent "and are still unpaid," and that thus he violated a vital covenant of the agreement, for which he forfeited any rights he might have had thereunder. This is the gravamen of the complaint. It is further alleged that the "plaintiffs have kept and performed all the covenants and agreements in said contract to be kept and performed."

The execution of the contract and the fact that defendant entered into the possession of the land described in the agreement and has ever since the making thereof been and at the time the answer was filed was still in the possession of the premises are admitted by the answer. As to the alleged failure of the defendant to pay the taxes on the premises for the years 1920-21 and allowing the same to become delinquent, the answer alleges, in substance, as follows: That the plaintiff, W. D. Collins, upon the making of the contract, directed the county assessor to assess the property in the name of the defendant, but directed and requested the assessor to send the tax statement or tax bill to said defendant in his (said plaintiff's) care "Box 413, Exeter"; that said plaintiff informed the defendant that he had directed all tax statements affecting the property in dispute sent in his (said plaintiff's) care and that he assured the defendant that whenever the tax bills against the property were sent to him (defendant) in his (said plaintiff's) care he (said plaintiff) would notify defendant of that fact and at the same time inform him of the amount of the taxes and when the same would become payable; that the said plaintiff did receive from the tax collector a statement of the amount of the taxes assessed against the premises for the years 1920 and 1921, but that he willfully and deliberately withheld the same from defendant and likewise failed to notify the latter of the amount of said taxes and when they were due and payable, and that this conduct on the part of said plaintiff was with the wrongful and fraudulent purpose and intent to cause defendant to default in the payment of the taxes assessed against the premises for those years and thereby cause defendant to forfeit all rights acquired by

him under and by virtue of the provisions of said contract. It is further alleged, in this connection, that the defendant is a foreigner, that he does not understand the English language; that he is not, and never has been, familiar with the laws of this state regarding the time for the payment of taxes, and that he relied solely upon the promise of said plaintiff to furnish him with information as to the amount of taxes he would be required to pay and of the time when the same should be paid in order to prevent them from becoming delinquent; that immediately upon learning that said taxes were delinquent the defendant paid the same, together with all interest, penalties, etc. These facts are alleged in characteristic or appropriate legal nomenclature and given in more minute detail than we have stated them here, but our statement is sufficient to disclose the defense to the real ground upon which a forfeiture is sought.

The answer also denies that the plaintiffs have complied in all respects with the terms of the contract and then proceeds to allege wherein the plaintiffs failed in that particular. These matters are set up as special defenses and particularly as grounds upon which to predicate the proposition advanced by the defendant that the plaintiffs had waived the provision of the contract that time is an essential or of the essence thereof. The findings, which are, in all respects, in accord with the allegations of the answer, contain a statement of the matters to which we are now referring, and we will take the same from the findings instead of reproducing the allegations of the answer with respect thereto. There is, however, one matter set up as a special defense to which we may here refer, to wit, that subsequent to the execution of the contract the same was changed by an oral agreement thereafter executed in the following particular: That although the contract provided that the defendant should plant the north twenty acres of said land to grape-vines, it was orally agreed between the parties that he need not comply with said provision, but would be required to plant fifteen only of the said twenty acres to grape-vines and plant the remaining five acres to alfalfa and that, relying upon said oral agreement, the defendant did plant fifteen acres only of said twenty acres to grape-vines and the remaining five acres to alfalfa.

The findings may, in substance, be stated as follows: That the defendant is of a nationality foreign to the United States; that he neither speaks nor understands clearly the English language, and that he is not familiar with business methods and is entirely unfamiliar with the tax laws of the state of California and their requirements; that plaintiff, W. D. Collins, directed the property in question to be assessed in the name of the defendant, but at the same time instructed the assessor to send the tax statements as to said property in the name of defendant in his (said plaintiff's) care, at his postoffice address, and that said plaintiff informed defendant of the instruction he had so given the county assessor, and that he (said plaintiff) would notify defendant of his receipt of said statement when he received the same and of the amount of the taxes and the time of payment thereof; that defendant relied upon this statement by said plaintiff and that the latter well knew that defendant solely relied upon him to furnish him (defendant) with such information; that the tax collector sent by mail the tax bills on said property to defendant in care of said Collins; that the latter received said tax bills and "did willfully withhold the same from the defendant; that the defendant, prior to said taxes becoming delinquent, did ask plaintiff, W. D. Collins, for said tax bill, but that the said W. D. Collins did not deliver the same to the defendant nor inform him as to the amount thereof nor as to the time when the same should be paid, all for the express purpose of permitting and allowing the defendant to become in default as to the provisions of said contract providing for the payment of taxes; that the defendant was at all times after said taxes became due, ready, willing, and able to pay said taxes and desired to pay the same and did actually pay said taxes to the tax collector of Tulare county immediately upon receiving notice of this action; that plaintiffs, or either of them, did not pay said taxes or any portion thereof and that neither of said plaintiffs has been damaged in any amount whatsoever or at all by reason of the failure of the defendant to pay said taxes prior to the delinquency thereof; that, in addition to paying said taxes, the defendant paid all fines and penalties in relation thereto and that the lien of said taxes was by the defendant wholly discharged; that other than the nonpayment of said taxes . . . the defendant

has fully complied with each and every term, covenant and condition of said contract to be by the second party [defendant] therein complied with and is not in any manner in default on account of said contract.'' The court further found that the plaintiffs have not kept and performed the covenants and agreements in said contract to be by them kept and performed; that the plaintiffs failed to dig a sufficient pit on said land and install a four-inch centrifugal pump, together with a seven and one-half power motor at their own expense and that they failed to build and lay the twelve hundred feet of ten-inch cement pipe from the said pit up the east line of the land described in said contract to the north line of said land within the time prescribed by the contract, to wit, the first day of March, 1920, but that the work thus referred to was not done until a long time after said date; that by reason of the failure of the plaintiffs to dig a sufficient ditch and install the pumping plant and lay the cement pipe referred to as specified by the contract they waived, prior to the time at which said taxes became delinquent, the operative effect of the provision of the contract that time was to be considered of the essence thereof.

As to the oral agreement whereby the defendant was allowed by the plaintiffs to plant to grape-vines fifteen acres only of the north twenty acres above mentioned and the remaining five acres to alfalfa, the finding is in harmony with the allegations of the answer, as is also the finding with reference to the failure of the plaintiffs to install the motor pumping plant and to lay the cement pipe within the time expressly limited by the contract, all these matters having been set up in the answer and for the purposes above indicated.

In addition to these special findings, the court made a general finding that ''all of the allegations of the plaintiffs' complaint, except as hereinbefore expressly found, are untrue in that all of the allegations of the answer are true.'' Among the conclusions of law drawn from the findings of fact are the following: ''That the defendant ought to be relieved and excused from his failure to pay the taxes on the property described in said contract and in plaintiffs' complaint,'' and that ''the said contract should not be canceled and should not be null or void and should not be deter-

mined to be of no force and effect''; that the defendant is entitled to judgment, etc.

As above suggested, the failure of the defendant to pay the taxes within the time fixed by law for their payment and so allowing them to become delinquent involves the only breach of the agreement which the plaintiffs in their pleading complain about and upon which thus they solely rely, although the evidence, responding to certain purported special defenses set up by the answer and referred to above, took a wider range and disclosed other matters as to one of which, to wit, the act of the defendant in not planting the north twenty acres entirely to grape-vines, might have been counted upon by the plaintiffs. As to these matters of special defense, it is the theory of the defendant that the plaintiffs, having themselves failed to pursue strictly the terms of the contract, waived the provision of the contract that time was an essential of the agreement or had by their conduct themselves not treated the agreement as one whose terms and provisions were to be strictly pursued by either of the parties thereto. While the evidence as to said matters is in positive conflict and the findings thereon are, therefore, put beyond the power of an appellate court to disturb, we do not regard them as important in the determination of this controversy. The real point at issue in the court below was whether the defendant, having breached that provision of the contract requiring him to pay the taxes assessed against the premises for the years 1920 and 1921 within the time prescribed by law, made such a showing by way of excuse for his default in that particular as to entitle him to be relieved therefrom by a court of equity, the action by the plaintiffs and the defense set up by the defendant being of equitable cognizance; and the questions for us to determine are: 1. Whether the findings as to the showing made by the defendant are sufficiently supported; 2. If so, whether the showing is sufficient as a matter of law to entitle the defendant to the relief granted him by the court below.

The land in dispute was originally the subject of a contract of sale between the plaintiffs and one Paul Ohannesian, who, after entering into said contract, transferred his interest therein to the defendant.

Upon the transfer of the contract to the defendant the plaintiff, W. D. Collins, had the property described in the instrument assessed in the name of the defendant. It was stipulated at the trial that "in the assessment-book for 1920, Vol. N, page 146, the entry of the assessment of the property is 'Eksoozian, M. H., care of W. D. Collins, Box 413, Exeter.'"

The defendant, according to his testimony, was a native of some foreign country, and, at the time the transaction here involved took place, had been in the United States about ten years, for six years of which he had resided in the state of California. He had never attended school in this country and was unfamiliar with our language and system of tax laws. In fact, at the trial of this case, it seems it was necessary to take his testimony through an interpreter.

The defendant testified that said plaintiff told him of his intention of having the property assessed in his (defendant's) name and further told him that he (plaintiff) would instruct the assessor or the tax collector to mail the statement of the amount of the taxes assessed against the property in the name of the defendant, in care of said plaintiff; that the latter assured defendant that, upon receiving the statement, he would forward or deliver the same to him; that he and the plaintiff had a distinct understanding that the latter would, upon receiving the tax statement either pay the taxes himself and thereupon present the tax receipt to defendant, who was to reimburse him, or deliver the statement to defendant so that the latter could pay the taxes himself; that on one occasion he met the plaintiff on a public road near Exeter and then and there asked him about the taxes and inquired whether he (plaintiff) had received the statement as to the property and that plaintiff declared that he had received no such statement; that thereafter he met the plaintiff in Exeter and again inquired about the taxes and whether the latter had received the tax statement, to which plaintiff replied in the negative; that he had never during his lifetime paid taxes; that he did not know when taxes became due in California and that the plaintiff at no time informed him that they were due or when they would become delinquent, if not paid; that he had no knowledge that the taxes on the property had become delinquent until he received notice by summons of the filing of the complaint

in this action, which was on the twenty-fifth day of May, 1921; that, after being served with summons herein, he, accompanied by his attorney, went to the county tax collector's office and paid the taxes, together with all the fines and penalties, etc., thereby releasing the property of the encumbrance subsisting upon it by reason of said delinquency. The defendant further testified regarding the oral agreement and as to the default of the plaintiffs in installing the pumping plant and laying the cement pipe above referred to within the time prescribed by the contract. These matters, as before stated, we regard as inconsequential in the decision of this case and we may, therefore, waive further consideration of the facts in regard thereto.

Paul Ohannesian, the original conditional vendee of the real estate in question, and who, as stated, transferred to defendant his interest in the contract with the plaintiffs for the purchase of said property, testified that when the transfer was made he said that W. D. Collins, the defendant and the attorney for the plaintiffs, were present; that a Mr. Tashjian on that occasion acted as interpreter for the defendant; that, after the present contract was signed, there was something said about recording it and he (the witness) remarked to Collins and the latter's attorney that "if this contract is not going to be recorded, the tax collector has got to assess the property in Mr. Collins' name. Mr. Collins gets the statement of the taxes and he ought to pay the taxes or turn it over to Mr. Eksoozian to pay the taxes. . . . I said this right in front of Mr. Machetanz (attorney for the plaintiffs) and Mr. Collins both. . . . I had this land under contract before Eksoozian. . . . I explained the contract to Eksoozian and so did other parties. I told him in that explanation that he had to pay the taxes."

The tax collector of Tulare County testified that she had occasion to investigate the matter of taxes assessed against the premises for the years 1920 and 1921; that the property was assessed to the defendant; that there was a notation on the assessment-roll to the effect that the tax bill was to be mailed to Eksoozian, "in care of W. D. Collins, at Exeter." She further testified: "I do not know when it [the notation] was made in the book. . . . Where an address in care of some person is put on the assessment-roll the bill is always sent in care of the person whose name appears on the

61 Cal. App.—13

assessment-roll." She stated that she did not personally know whether a tax statement as to the property in controversy was sent to W. D. Collins, "and I don't know whether he received any tax statement in regard to it."

The plaintiff testified that he did not instruct either the assessor or tax collector to send the tax statement as to the property to defendant in his (plaintiff's) care; that he never received any tax statement as to the property; that he met the defendant several times after the taxes fell due—once on January 20, 1920—and spoke to him about them and the necessity for paying them, but that defendant invariably declared to him that he (defendant) would not pay the taxes and that the plaintiff would have to do so. Plaintiff stated that he paid the taxes on all the property belonging to him or assessed in his name. His testimony as to the oral agreement was positively contradictory to that of the defendant and the excuse he offered for not installing the pumping plant and laying the cement pipe within the time called for by the contract was that, having attempted to do all this work in the month of February, 1920, the weather conditions were such that it could not be successfully done—that is to say, the cement pipe could not be laid because the ditch was full of water and, while he dug the pit and installed the pump, the defendant would not permit him to set up the motor for the reason that he (defendant) had no facilities for housing it.

The foregoing comprises a fair statement in substance of the testimony received in the case, and there can be no doubt that therein is to be found sufficient support to the findings. It is not necessary to point in detail to the circumstances developed by the evidence apparently justifying the court in concluding that W. D. Collins instructed the assessor to have the tax statement of the property mailed to him and that he received said statement before the taxes became delinquent and for some reason failed or omitted to deliver the same to the defendant or to inform the latter of the fact that the taxes were due and payable and when they would become delinquent if not paid. These inferences were fairly and reasonably within the evidence as produced and we must assume, in support of the judgment, that the court did draw those inferences from the circumstances

brought out by the evidence. (*Taylor* v. *Avila*, 175 Cal. 203, 205, 206 [165 Pac. 533], and cases therein cited.)

These significant observations may, however, be offered: That there is not shown any reason why the defendant should have willfully or purposely allowed the taxes to become delinquent. After taking possession of the property, he had improved it and no doubt thus in some measure enhanced its value over that of the purchase price, assuming, as we may, that such price represented a reasonably fair value of the premises. In the absence of a clear showing to the contrary, it is reasonable to assume that he would not have sacrificed his interests in the premises or in the contract by purposely or negligently failing to pay the taxes. He knew that burden was upon him, because it was not only so written in the contract, but the instrument was so explained to him by the witness Ohannesian, his predecessor in interest in the contract. It may further be suggested that if the plaintiff, W. D. Collins, intended good faith in his attitude toward the contract, it is most probable he would, whether he received this statement or not, have, in time to prevent their delinquency, voluntarily called the attention of the defendant to the fact that the taxes were due and payable. He knew when the taxes were to be paid. He had paid his own or those assessed against the property belonging to him and standing of record in his name, and at the same time was vitally interested in the contract by which he had agreed to sell the property herein involved to the defendant and he knew that it was the duty of the defendant under the contract to pay the taxes thereon. The promise which the court found that W. D. Collins made to the defendant to notify him of the time for the payment of the taxes and the amount thereof was probably the outgrowth of his (plaintiff's) knowledge of defendant's want of an understanding and the use of the English language and his gross ignorance of the tax laws of the state. At any rate, the court could justly have so inferred. But it may be replied that the defendant is subject to the conclusive presumption that all persons know the law, and, therefore, are charged with knowledge of the time when taxes are required to be paid to prevent their becoming delinquent and, consequently, there was no excuse for his failure to pay the taxes within the time prescribed, even though he had not

been informed of the amount and the time of payment thereof by W. D. Collins. Of course, by going to the tax collector's office, the defendant could have learned the facts essential to prevent the delinquency of the taxes, and, under ordinary circumstances, every owner of property subject to the payment of taxes is charged with that duty, or, at any rate, with the duty of seeing that the taxes assessed against his property are seasonably paid. His failure to pay because of ignorance of the amount or the time of payment or both would not be sufficient to relieve him from the consequences of his default. But, although the time for the payment of taxes is fixed by law, still a taxpayer may, as may any person as to any legitimate transaction, commit to an agent the duty of looking after the payment of his taxes, and it was this very duty which W. D. Collins, undoubtedly prompted by his interest in the land, voluntarily took upon his own shoulders and likewise assured the defendant that he would personally attend to the payment of the taxes.

The appellant, however, stands upon the proposition that this case, as made by the findings, comes within the general rule that where a contract for the sale of real estate, in which time is made of the essence thereof, has been breached by the vendee by the nonpayment of the taxes, the latter can secure relief neither in law nor in equity from the consequences of his default. The rule is stated in 1 Pomeroy on Equity Jurisprudence, second edition, section 455, as follows: "It is well settled that where the parties have so stipulated as to make the time of payment of the essence of the contract, within the view of equity as well as of the law, a court of equity cannot relieve a vendee who has made default."

From sections 1492 and 3275 of the Civil Code, construed, as they must be, by the light of each other, the same rule is deducible.

The doctrine has been stated and applied by our supreme court in several cases, notable among which is that of *Glock* v. *Howard and Wilson Colony Co.*, 123 Cal. 19 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], the opinion having been prepared by Mr. Justice Henshaw. (See, also, *Gray* v. *Tubbs*, 43 Cal. 359; *Martin* v. *Morgan*, 87 Cal. 203 [22 Am. St. Rep. 240, 25 Pac. 350]; *Woodruff* v. *Semi-Tropic etc. Co.*, 87 Cal. 275 [25 Pac. 354]; *Vorwerk* v. *Nolte*, 87

Cal. 236 [25 Pac. 412]; *Newton* v. *Hull,* 90 Cal. 487 [27 Pac. 429]; *Bennett* v. *Hyde,* 92 Cal. 131 [28 Pac. 104].)

[1] There is some language used in the above cases, however which implies that even where such a contract expressly or by reasonable inference from its language provides that time is of the essence thereof, relief may be granted from the consequences of the default by the vendee in the payment of the purchase price or any installment thereof if a showing such as would appeal to equity be made. What is such a showing as would justify equity to interpose its remedial power in favor of the defaulting vendee in such a case none of the cases—at least, none coming under our immediate observation—has pointed out. But, however this all may be, we do not think that the present case falls within the doctrine of the rule above adverted to. The determination of this case, upon the findings as made, rests rather upon the doctrine of estoppel than upon the rule stated by Mr. Pomeroy and applied in the cases above named. Even if it be true that the plaintiff, having received the statement of the taxes assessed against the property for the years 1920 and 1921, and having promised defendant that he would, on receiving the statement, deliver the same to him or let him know the amount of the taxes and when the same were to be paid, did not willfully and fraudulently refuse and fail to deliver to the defendant said statement or inform him of the amount of the taxes against the property and when they were due and payable, as the court found was the fact, still he (the plaintiff) should, under the circumstances as disclosed by the findings, be estopped from asserting his claimed right to have the contract forfeited because of the nonpayment by the defendant of said taxes. This follows from the doctrine of equitable estoppel. This doctrine rests upon the general principle that "when one of two innocent persons—that is, persons each guiltless of intentional, moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct, acts or omissions, has rendered the injury possible." (1 Pomeroy's Equity Jurisprudence, 2d ed., sec. 803.) We must, however, accept as verity the findings of the court as to the facts of the matter and, so viewing them, it must be accepted as the fact that the conduct of the plaintiff with respect to the nonpayment of the taxes by the defendant was

characterized by fraud—that is to say, that he, having received said statement, designedly and with the intent of causing the defendant to become in default in the matter of compliance with a vital provision of the contract, withheld said statement from the latter so that he would forfeit whatever rights he had acquired by reason of the convention.

[2] The law does not favor forfeitures and a party should not be divested of valuable rights by way of forfeiture for default in complying with the provision of a contract by which those rights have been acquired unless it is clearly made to appear that the other party to the contract has suffered or will suffer serious detriment or damage by reason of such default, or unless it is made to appear that the default was intentional or willful.

While we are not to be understood as holding to the view that, under certain circumstances, the rule invoked and applied in the above-named cases may not be invoked and applied as to a default by a conditional vendee in failing to pay the taxes assessed against the property which is the subject of a contract of sale of real property and as to the terms and conditions of which time is made an essential, it is, nevertheless, a fact of some significance that the default from the effect of which the defendant here seeks to be relieved is not, like that in the cases above mentioned, in his failure to pay the purchase price of the property within the prescribed time. The taxes, penalties, etc., having finally been paid by the defendant, the plaintiffs have not, as might be true were the default of the defendant in the failure to pay the purchase price, or the interest thereon, within or at the time specified, suffered any injury or damage by reason of the fact that the payment of the taxes was delayed to a time at which they had become delinquent. The only sufferer from the default was the defendant himself, he having, in addition to the taxes, been compelled to pay the fines, penalties, etc., accruing against the property because of the failure to pay the taxes within due and proper time. Nor is there any showing here that the default of the defendant in the payment of the taxes was willful or intentional or the result of gross or any negligence on his part. It has been shown why the taxes were not paid when due and payable, and the defendant testified and the court found that he was at all times willing, ready, and able

to pay them and would have done so had he known when to have paid them to prevent their becoming delinquent. In view of all these considerations and of the evidence, of which there has been presented herein a synoptical review, we think the application here of the equitable doctrine of estoppel is peculiarly appropriate. Indeed, to our minds it is manifest that to sanction the forfeiture sought in this case would be to approve a palpable injustice; and it may well be remarked that, since the plaintiffs themselves were the first to breach the provision of the contract making time an essential by failing to install the pumping plant and lay the cement pipe, within the time expressly limited by the contract, they having had from September, 1919, to March 1, 1920, within which to do so, the equities of the case are certainly with the defendant.

[3] The court permitted the defendant to testify on direct examination over objection by counsel for the plaintiffs that W. D. Collins did not tell him (defendant) when the taxes were payable. [4] The court also allowed the tax collector to state on cross-examination over objection by counsel for the plaintiffs that the taxes had finally been paid, although after they had become delinquent. It is here urged that these rulings were erroneous and prejudicial. We think, as must be implied from the above discussion, that the testimony was competent and pertinent to the issues of the case.

[5] It is contended generally that the oral testimony regarding the matter of the nonpayment of the taxes by the defendant within the time prescribed by law tended to vary the terms of the written contract. This contention is not tenable. The effect of the testimony regarding that matter was not to change or modify the terms of the agreement in any respect. The testimony was intended only to show such an excuse for the defendant's failure to comply within the time required with a vital provision of the agreement as would or might be sufficient to entitle him in equity to be relieved of the consequences thereof.

For the reasons hereinabove stated, the judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.