[Civ. No. 24087. Third Dist. May 29, 1986.]

SARITA FREEMAN et al., Plaintiffs and Appellants, v.
FRANK W. LIND et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II-VI.

**COUNSEL**

Eugene Schneider for Plaintiffs and Appellants.

Robert F. O'Neal, John A. Holland, MacKay & Zukerman, C. Robert MacKay, Miller, Starr & Regalia and Harry D. Miller for Defendants and Respondents.

## OPINION

**CARR, J.**—This is an appeal from a judgment of nonsuit entered after plaintiffs' opening statement at trial.[1] The primary issue tendered is whether the failure of a trustor to provide fire insurance on the secured property in accordance with the terms of the trust deed precludes the trustor, as a matter of law, from maintaining an action for wrongful foreclosure when the sole basis for declaring a default and instituting foreclosure is the lack of fire insurance.

We hold that the failure to secure fire insurance on the secured property precludes an action for wrongful foreclosure only when the lack of such insurance impairs the security for the underlying debt and this is a factual issue to be determined by the trier of fact. Accordingly, we shall reverse the nonsuit as to the defendant Lind and affirm as to defendants Northwestern Title Company of Butte County (Northwestern Title) and Central Bank.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts, as set forth in plaintiffs' opening statement, which for purposes of this appeal we accept as true are: On July 21, 1972, Myrtle Noel sold a parcel of property in Butte County to Terry and Martha Davis. In connection therewith, the Davises executed and delivered to Noel a promissory note in the amount of $18,000, payable in monthly installments of $150 at 7 percent interest. The note was secured by a deed of trust on the property naming Noel beneficiary and defendant Northwestern Title trustee. Defendant Central Bank was the designated agent of Noel for the receipt of payments under the note.

The provisions of a fictitious deed of trust previously recorded were incorporated in the Davis deed of trust. Included in such provisions was a standard insurance clause, which provided: "A. To protect the security of this Deed of Trust, Trustor agrees . . . : [¶] 2. To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the

---

[1] Plaintiffs' "Notice Of Appeal From Judgment" states the plaintiffs appeal "from the judgment on the complaint as rendered . . . in this matter on April 12, 1984." There is no such judgment as one "on the complaint" and the only judgment rendered herein is contained in the "Order For Judgment Of Non Suit" signed April 11, 1984, and filed April 12, 1984, after the court, in open court, announced its granting of defendants' motions for nonsuit on plaintiffs' opening statement. We treat this as an appeal from the judgment of nonsuit.

entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice." (See also Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 3.7, p. 79.)

By November 1978, ownership in the property was held by Judith Redwing, Me-Shra-Kwi, and Vince Zager. At that time, plaintiffs Onita Dougherty and Sarita Freeman befriended Redwing and Kwi and became interested in purchasing their interests in the property. The owners were behind on note payments. Plaintiffs attempted to pay for them but Central Bank rejected their payment.

On September 12, 1978, plaintiffs purchased the interests of Redwing and Kwi. That month, unknown to plaintiffs, defendant Frank Lind, Noel's son and attorney, instituted nonjudicial foreclosure proceedings by filing a notice of default and election to sell on behalf of his mother, alleging the property was in default for failure to pay principal and interest on the note and property taxes and insurance on the security property.

Following acquisition of interest in the property, plaintiffs ascertained from Central Bank that at least $700 was owed on the note and they tendered that amount. Central Bank, knowing payments were in default, contacted Noel to ask her whether the bank should accept the payment. Noel gave her permission. A week later, plaintiffs discovered they owed an additional $150, which they paid to Central Bank. Records of the bank indicated that as of the last payment, November 20, 1978, plaintiffs were current in payments through December 1, 1978. County tax records indicated property taxes were not due until December 10, 1978.

After plaintiffs made their payments, Lind discharged Central Bank as Noel's agent. On November 27, Lind rescinded the first notice of default and filed a second notice, alleging the same reasons for default as in the first notice. Plaintiffs had three months within which to cure the default or face a foreclosure sale. (See Civ. Code, § 2924c.) In fact, there was no fire insurance on the property at that time but principal and interest were current and taxes were not yet overdue.

Upon receiving notice of default, plaintiffs contacted Central Bank to ascertain what was necessary to cure the default but the bank told them it had been released as agent. Shortly thereafter, on December 1, Noel assigned all her interest in the property to Lind.

On December 10, plaintiffs drove to Oroville to determine first-hand what was necessary to cure the default. While there, they recorded their deed

and paid the taxes on the property. They then went to Northwestern Title, where they were directed to Lind's attorney, Mr. Robison.

On December 15, Robison wrote a letter to plaintiff Onita Dougherty listing 24 major defects in the property structures that would have to be repaired or replaced in order to cure the default, none of which, except for failure to maintain fire insurance, was listed in the notice of default.[2] Robison concluded: "As you can see, the problems are very serious. The property value must be maintained so that the value of the property exceeds the debt. [¶] Each of the above conditions must be cured to remove the default. I don't really see how all these matters can be cured, meaning that the entire balance of $13,346.17 plus interest from December 1st would have to be paid to cure the default. If the trustors elect to cure, the premises will have to pass county inspection." In fact, the value of the property, *excluding the structures*, exceeded the amount of the indebtedness.

Plaintiffs attempted to cure the defects listed in the letter as well as they could but were unable to do so within the time allowed. They also attempted to procure fire insurance but were refused such coverage as the property was in default and proceeding to foreclosure. Plaintiffs attempted several times, unsuccessfully, in late January and early February 1979 to ascertain exactly how much money was required to make payments current.

On February 9, 1979, Robison wrote a letter to plaintiffs stating that "Mr. Lind feels that the property should either be paid off or the foreclosure continued." On behalf of Lind, Robison offered to refund to plaintiffs the $850 they previously paid to Central Bank and any funds they had expended in restoring the property.

Finally, on February 20, 1979, plaintiffs received a letter from Robison setting out exactly what was required to cure the default: (1) restore the premises to a condition acceptable to Lind, as outlined in the December 15 letter; (2) pay fees, principal and interest of $536.04, due as of February 16, 1979, and accumulating interest of $4.9645 per day (representing the total owed less the $850 already paid to Central Bank); and (3) produce

---

[2]The letter listed the following "impairment[s]": removal of refrigerator, broken windows and screens, removal of structural living room wall, damage to roof, failure to maintain roof, conversion of garage to rooms, removal of floor coverings, removal, modification, addition or destruction of electrical wires, dry rot in floors, removal, destruction or failure to repair fences, failure to maintain house, failure to maintain yard, removal of stove, removal of space heater, removal of trash burner, failure to maintain driveway, construction of unsightly accessory buildings, failure to maintain fire insurance, failure to maintain the water allotment, alteration of living room ceiling, destruction or removal of cabinets, accumulation of junk on the premises, use of property for unlawful purposes, and maintenance of a fire hazard.

proof of fire insurance with Lind as loss payee. Robison informed plaintiffs that Central Bank accepted their payments on November 13 and 20 without authority to do so. He reiterated that Lind would refund those amounts if they wished and would consider reimbursing plaintiffs for expenditures made in restoring the property. Robison also offered to refund the amount plaintiffs paid for taxes. On February 23, Robison wrote a letter to plaintiffs' attorney repeating these conditions.

On February 27, 1979, plaintiffs tendered a check to Robison in the amount of $537. Robison informed plaintiffs the payment was too late and foreclosure proceedings would ensue.

The record further discloses that on March 6, 1979, plaintiffs filed a complaint against Noel, Lind, and Northwestern Title seeking (1) a declaration that plaintiffs have not breached the obligations secured by the deed of trust; (2) a determination of the amount paid by plaintiffs and a declaration that plaintiffs have tendered to both Northwestern Title and to Noel and Lind a sufficient amount to cure the alleged default; (3) punitive damages in that defendants' refusal to accept the amount tendered was not done to achieve the intentions of the deed of trust and promissory note but to intentionally deprive plaintiffs of their interest in the property; (4) a temporary restraining order and injunction enjoining defendants from selling the property; and (5) costs of suit and attorney fees.

On March 26, 1979, the notice of default was rescinded. Plaintiffs proceeded with their action and, on May 9, filed a first amended complaint, adding as defendants Central Bank and Vince Zager, co-owner of the property. Plaintiffs alleged the same causes of action as in the first complaint and added the following: (1) damages from Zager for refusing to participate in plaintiffs' action to preserve and protect their title to the property; (2) negligent misrepresentation against Central Bank for falsely representing to plaintiffs that their payments were current as of December 1, 1978; (3) fraud against Central Bank based on the same facts; (4) wrongful foreclosure against Noel and Lind in that they filed notice of default with no reasonable grounds for believing that plaintiffs were in default; (5) wrongful foreclosure in that Noel and Lind knew plaintiffs were not in default; and (6) defendants acted with oppression, fraud or malice in filing the notice of default in that they did not act to achieve the intentions of the deed of trust and promissory note but to deprive plaintiffs of their right, title and interest to the security property, justifying punitive damages.

On May 29, 1979, Lind filed a third notice of default and eventually purchased the property at a foreclosure sale.

The matter finally came to trial on February 21, 1984. On that day plaintiffs filed proposed amendments to their first amended complaint. By these amendments, plaintiffs proposed to add that each defendant at all times was the agent, servant or employee of every other defendant and acted within the scope of such agency; that Northwestern Title, Noel and Lind refused plaintiffs' tender of money to cure the default on the ground the tender was untimely; that as a result of defendants' actions, plaintiffs have actually been deprived of their right, title and interest to the security property; that Lind has caused the property to be sold and taken title; that Lind intended to induce plaintiffs to breach their obligations under the deed of trust and promissory note; that plaintiffs have further been damaged in having lost title to the property.

The trial court denied leave to amend and further prohibited plaintiffs from introducing any evidence of events occurring after the rescission of the November 27 notice of default, including the filing of the third notice of default and the eventual foreclosure sale.

Following opening argument, the court granted motions for nonsuit by defendants Lind, Central Bank and Northwestern Title. As to Lind, the court concluded the failure to provide or tender fire insurance justified the enforcement of the deed of trust by way of foreclosure as a matter of law, even though the lack of insurance did not impair the security. As to Central Bank and Northwestern Title, the court found plaintiffs failed to present a prima facie case of liability against either of them. The court ordered plaintiffs to pay defendants' costs of suit as well as Northwestern Title's attorney fees. The court further ordered defendant Vince Zager to contribute his share of the costs of prosecuting the suit. Plaintiffs appealed from the judgments of nonsuit.

On appeal, plaintiffs contend that as a matter of law the failure to maintain fire insurance under a deed of trust does not justify foreclosure as a matter of law but raises an issue of fact as to whether foreclosure is justified under the circumstances. Plaintiffs further contend the trial court erroneously denied a motion to amend their first amended complaint on the first day of trial and erroneously prohibited them from introducing evidence of events occurring after defendants' rescission of the notice of default.

I

In determining the nonsuit issue we are guided by certain well-established principles. ■ On a motion for nonsuit, "'the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must

be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . .'" [Citations.] [¶] ██ In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. 'The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.'" (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 [206 Cal.Rptr. 136, 686 P.2d 656].)

██ "Moreover, the granting of a nonsuit after an opening statement is a disfavored practice; it will be upheld only when it is clear that counsel has undertaken to state all of the facts which he expects to prove and it is plainly evident that those facts will not constitute a cause of action." (*Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 509 [118 Cal.Rptr. 741, 81 A.L.R.3d 628]; see also *Gallegos* v. *Union-Tribune Publishing Co.* (1961) 195 Cal.App.2d 791, 796 [16 Cal.Rptr. 185].)

██ The subject matter of the present action, foreclosure under a power of sale in a deed of trust, has historically been considered a harsh remedy, subject to close scrutiny. (*System Inv. Corp.* v. *Union Bank* (1971) 21 Cal.App.3d 137, 153 [98 Cal.Rptr. 735].) ██ A provision in a deed of trust or mortgage allowing acceleration and foreclosure for failure to comply with its terms is in the nature of a forfeiture or penalty, from which the trustor may be relieved upon during the default. (*Bisno* v. *Sax* (1959) 175 Cal.App.2d 714, 725-729 [346 P.2d 814]; Civ. Code, § 2924c.) As this court has stated, "[t]he law does not favor forfeitures and a party should not be divested of valuable rights by way of forfeiture for default in complying with the provision of a contract by which those rights have been acquired unless it is clearly made to appear that the other party to the contract has suffered or will suffer serious detriment or damage by reason of such default, or unless it is made to appear that the default was intentional or willful." (*Collins* v. *Eksoozian* (1923) 61 Cal.App. 184, 198 [214 P. 670].)

██ The underlying question in the present case is whether a beneficiary is entitled to foreclosure under an acceleration provision in a deed of trust when the sole default is the failure to provide fire insurance on the security property and the lack of insurance does not impair the security. For purposes of the nonsuit we assume the only default in the terms of the deed of trust was the failure to provide fire insurance. We further assume that the lack of fire insurance did not imperil the ability of the property to act as full

security for the obligation under the promissory note, because, had the structures on the property burned down, the fair market value of the land still exceeded the amount owed on the note. Finally, although the record does not contain a full copy of its terms, we assume that the deed of trust contains the standard provision allowing the beneficiary to accelerate and foreclose upon the default of the trustor in the performance of any agreements contained therein. (See Berhnhardt, Cal. Mortgage and Deed of Trust Practice, *supra*, § 3.7, p. 81.)

This is an issue of first impression in California. It has been widely accepted in other jurisdictions that when the deed of trust contains express provisions which not only require the trustor to keep the premises or buildings insured but also permit the beneficiary to accelerate the debt upon the trustor's failure to provide the insurance, the trustor may, upon failure to comply with the insurance requirement, elect to accelerate the debt and obtain foreclosure under the deed of trust. (Annot., Failure to Keep Up Insurance as Justifying Foreclosure Under Acceleration Provision in Mortgage or Deed of Trust (1976) 69 A.L.R. 3d 774, 777-790, and cases cited therein.)

Some cases have suggested the failure to keep up payments for fire insurance premiums does not justify the harsh remedy of foreclosure when the default does not impair the security. In *Kaminski* v. *London Pub. Inc.* (1973) 123 N.J. Super. 112, [301 A.2d 769] fire insurance on mortgaged premises had been allowed to lapse for over a year, but the mortgagor finally obtained insurance prior to the actual institution of foreclosure proceedings. The trial court denied foreclosure and the appellate court affirmed, observing that "[t]he failure to pay taxes or to maintain insurance does not impair the security of the mortgagee if those defaults are corrected promptly, *i.e.,* before the institution of foreclosure proceedings . . . . [¶] It is apparent that the mortgage security was imperiled through the lack of insurance during the period of time involved. However, no actual impairment of the security ever occurred . . . . We note . . . that the not inconsiderable payments on the first and second mortgages were made throughout the period without default. We therefore conclude that the Chancery Division judge properly exercised his equitable jurisdiction in refusing the harsh remedy of foreclosure." (301 A.2d at p. 771.)

In *Lawton* v. *Lincoln* (Okla. 1948) 191 P.2d 926, plaintiff foreclosed upon a mortgage based in part upon the failure of defendant to provide fire insurance in the amount of $5,000 as required by the terms of the mortgage. The insurance provided was in the sum of only $4,500. Plaintiffs had previously accepted the policy without objection or demand for additional insurance. In upholding the trial court's denial of foreclosure, the Oklahoma

Supreme Court held, "Under the circumstances we think that in the absence of a demand for more insurance on the part of plaintiffs, or any objection by them to the policy so delivered, the delivery of such policy amounted to a substantial compliance with the provisions of the mortgage, and that in the absence of any showing that the failure to furnish a policy for $5,000.00 was in any way prejudicial to the plaintiffs, or impaired their security, the failure to furnish a policy for $5,000.00 did not constitute a sufficient ground for the acceleration of the maturity of the debt and the foreclosure of the mortgage." (*Id.*, at p. 928.)

More recently, in *Brady* v. *Edgar* (Fla.App. 1982) 415 So.2d 141, the court, without setting out the facts, concluded, "On the facts of the case we find no abuse in the exercise of the trial court's discretion to deny acceleration and foreclosure where the security was not impaired, notwithstanding that the trial court found the mortgagors in default for failure to maintain hazard insurance and to timely pay real estate taxes." (*Id.*, at p. 142.)

These cases are of limited applicability to the case at bar. In *Kaminski* v. *London Pub., Inc., supra,* the mortgagor provided insurance before the institution of foreclosure proceedings. The mortgage in *Lawton* v. *Lincoln, supra,* accepted the tendered policy without objection and in *Brady* v. *Edgar, supra,* we are not apprised of the factual setting. However, inherent in each case is an implied holding that in any situation the harsh remedy of foreclosure is unjustified when the failure to provide fire insurance does not impair the security.

No California case has confronted the precise issue before us. Principles similar to the one urged by plaintiffs have been enunciated in cases construing the efficacy of the deed of trust acceleration clause in various factual situations. In *Collins* v. *Eksoozian, supra,* 61 Cal.App. 184, plaintiff instituted foreclosure for failure of the defendant to pay taxes when due on the security property. In affirming a judgment for defendant, this court stated, "[t]he taxes, penalties, etc., having finally been paid by the defendant, the plaintiffs have not, as might be true were the default of the defendant in the failure to pay the purchase price, or the interest thereon, within or at the time specified, suffered any injury or damage by reason of the fact that the payment of the taxes was delayed to a time at which they had become delinquent. The only sufferer from the default was the defendant himself, he having, in addition to the taxes, been compelled to pay the fines, penalties, etc., accruing against the property because of the failure to pay the taxes within due and proper time. Nor is there any showing here that the default of the defendant in the payment of the taxes was willful or intentional or the result of gross or any negligence on his part. It has been shown why

the taxes were not paid when due and payable, and the defendant testified and the court found that he was at all times, willing, ready, and able to pay them and would have done so had he known when to have paid them to prevent their becoming delinquent." (*Id.*, at pp. 198-199.)

In *Milstein* v. *Security Pac. Nat. Bank* (1972) 27 Cal.App.3d 482 [103 Cal.Rptr. 16], the county condemned 10 feet off the front of a commercial building and placed the estimated value of the condemned property into court. Security Pacific, as holder of a deed of trust on the building, claimed it was entitled to the condemnation proceeds to the extent of the entire remaining balance on the note secured by the deed of trust, an option which the deed of trust allowed. The building owner contended Security Pacific did not have the right to exercise that option as the condemnation did not impair Security Pacific's security.

The appellate court found for the owner, relying upon the implied covenant of good faith and fair dealing. The court held: "California law implies in any contract whose terms do not negative its application a covenant of good faith and fair dealing [citation], i.e., the implied promise by the parties to the contract each to do everything that the contract presupposes they will do to accomplish its purpose. [¶] The purpose of the note and deed of trust is that respondents shall have the use of the funds loaned on the terms and at the interest rate specified in the note, and that appellant shall have the security provided by the deed of trust. To carry out that purpose, the implied covenant of good faith and fair dealing requires that appellant beneficiary exercise its discretion with respect to the condemnation fund in such fashion that it distribute to respondent borrowers all proceeds in excess of those necessary to recoup any impairment in security caused by the eminent domain proceeding. Since the trial court concluded on substantial evidence that appellant's security is not impaired, respondents are entitled to all of the proceeds of the eminent domain action." (*Id.*, at pp. 486-487.)

In *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169], the Supreme Court held a "due-on-sale" clause in a promissory note or deed of trust cannot be enforced when the trustor enters into an installment land contract for the sale of the security, unless "the beneficiary-obligee can demonstrate a threat to one of his legitimate interests sufficient to justify the restraint on alienation inherent in its enforcement." (*Id.*, at p. 639.) This rule was extended to an outright sale of the security property in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], wherein the court found "that a due-on clause contained in a promissory note or deed of trust cannot be enforced upon the occurrence of an outright sale unless the lender can

demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (*Id.*, at p. 953, fns. omitted.)

Two subsequent cases dealt with fire insurance required by deeds of trust where the issue was entitlement, following a fire, of the trustor to rebuild or the beneficiary to apply the proceeds to the indebtedness, thereby accelerating the payments under the note. In *Schoolcraft* v. *Ross* (1978) 81 Cal.App.3d 75 [146 Cal.Rptr. 57], the deed of trust contained a provision, identical to that in the present case, requiring the trustor to provide fire insurance to the satisfaction of the beneficiary and giving the beneficiary the option to apply any proceeds from the policy to the indebtedness or to release them to the trustor. When fire destroyed the trustors' house, a balance of $13,585.01 was owed on the promissory note. The insurance policy provided the trustors could collect the cash value of the house at the time of loss, $8,250, or they could rebuild the house and be reimbursed up to $14,100. The trustors elected to rebuild. The insurance company executed a check for $8,250 payable to the trustors and the beneficiary and informed them the balance of the $14,100 would be paid upon completion.

The beneficiary refused to permit the proceeds to be used to rebuild the house and invoked the clause allowing her to retain the proceeds. Plaintiffs had to rent an apartment and thereby could not make payments on the note; the beneficiary foreclosed. In an action by the trustors for damages, evidence was received that a new home could have been constructed for $14,000 which, upon completion, would have had a fair market value of $20,000. The trustors were willing to sell the house upon completion and remit the balance of the note to the beneficiary.

In affirming judgment for the trustors, the court, relying on *Milstein* v. *Security Pac. Nat. Bank, supra,* 27 Cal.App.3d 482, held the beneficiary breached the implied covenant of good faith and fair dealing. As *Milstein* points out, the purpose of a deed of trust is that the borrower will have the use of funds loaned on specific terms and the lender will have the right to a specified repayment that is secured by the deed of trust (at p. 487). *The lender does not have the right to unilaterally cut off the borrower's right to use the loaned funds unless he can show that his security is impaired.*

"Here there is no evidence that the security was impaired by the fire nor is there any evidence that plaintiffs were unwilling or unable to continue making payments on the property. The sole reason advanced for defendant Ross' conduct was that she was old and sick and needed the money immediately to take care of her medical needs.

"The trial court in this case properly concluded on substantial evidence that the security was not impaired and that the beneficiary failed to act in

accordance with the implied covenant of the deed of trust, all to plaintiffs' damages in the sum awarded.

"As in *Milstein,* the two clauses in the deed of trust must be construed to avoid the unintended acceleration of the note. The parties intended that the purchase price would be paid in the ordinary course of events to the end that plaintiffs could enjoy the full use of the house, subject to the required monthly payments. Forcing the buyer to pay off in advance would result in a buyer losing certain property rights contemplated by the parties, among them the benefit of a long-term loan which permits the buyer to spread the purchase price of the property over a long time." (*Schoolcraft* v. *Ross, supra,* 81 Cal.App.3d at pp. 80-81.)

In *Kreshek* v. *Sperling* (1984) 157 Cal.App.3d 279 [204 Cal.Rptr. 30], the sellers of property took a promissory note of $400,000, with monthly payments at 8½ percent interest. The deed of trust on the property contained the standard clause requiring the trustor to maintain fire insurance and giving the beneficiary the option to apply the proceeds to the indebtedness or release them to the trustor. A fire destroyed 22,840 square feet of improvements on the property, leaving 103,000 square feet undamaged. The trustors spent $50,000 of their own money on various repairs but were undecided about whether to rebuild the destroyed portion. Following the fire, the property, including the destroyed portion, was worth about $2 million. At that time, $319,375.60 remained to be paid under the note.

The insurance company issued a check for $420,992 and the beneficiaries-sellers sought declaratory relief as to distribution of this sum. The trial court ruled the first $319,375.60 should be given to the beneficiaries to pay the indebtedness with the balance to go to the trustors.

On appeal, the court reversed and remanded, stating: "Recent cases take the position that the beneficiary of the deed of trust only has an interest in insurance proceeds or condemnation proceeds when his security is impaired. Even then, his interest extends only to the extent of the impairment." (*Kreshek* v. *Sperling, supra,* 157 Cal.App.3d at p. 282.) As in *Schoolcraft, supra,* the court emphasized that the purpose of the note would be defeated by allowing acceleration in the absence of impaired security. "Here, all sellers could expect from the note terms was to receive the agreed upon interest rate for the note's duration. The trial court by its judgment allowed sellers to accelerate payment on this note even though there was no showing that sellers [*sic*] security interest had been impaired. In fact, only contrary evidence was presented on the issue, i.e., that the value of the land and buildings were worth in excess of $2 million and the amount of the remaining debt was about $320,000. This action, urged by sellers, violated the implied

covenant of good faith and fair dealing, which requires that neither party impair the other's right to receive the benefits from the agreement." (*Id.,* at p. 283.)

The beneficiaries attempted to distinguish *Schoolcraft* in that the buyer in *Schoolcraft* intended to rebuild; in *Kreshek* there was no showing of such intent. The court rejected this distinction. "Their argument misses the point. *The whole purpose of the fire insurance policy under paragraph A (2) of the trust deed was to provide additional security for the deed of trust. To the extent the security was unimpaired, sellers had no right to keep the proceeds.*" (*Ibid.*; italics added.)

In remanding for a determination of whether the sellers' security interest was impaired, the court stated, "'the question whether the security of a deed has been impaired . . . should be treated as a question of fact to be determined in light of the particular circumstances of each case after a consideration of all the relevant factors.'" (*Ibid.*)

Although *Milstein, Schoolcraft,* and *Kreshek* are factually distinguishable, the principles enunciated apply with equal, if not greater, force to the present case. If, when a fire has actually occurred, the beneficiary is not entitled to the insurance proceeds to accelerate the indebtedness if the security of the property is unimpaired, certainly the beneficiary should not be permitted to employ the harsh remedy of acceleration and foreclosure for the mere failure to *provide* fire insurance when its lack does not place the security in peril. As the *Milstein-Schoolcraft-Kreshek* line of cases explains, the purpose of a note and deed of trust is to permit the borrower the use of funds loaned on the terms and at the interest rate specified and to give the lender the right to a specified repayment with the security of the deed of trust. The only purpose of the fire insurance provision is to provide *additional* security for the repayment of the loan. (*Kreshek* v. *Sperling, supra,* 157 Cal.App.3d at p. 283.) To the extent the ability of the property to act as full security for the debt is not imperiled by the lack of fire insurance, a default in the payment of insurance should not result in acceleration and foreclosure. Plaintiffs were willing and apparently able to continue making payments on the property. Moreover, they were willing to obtain insurance but were unable to do so as the property was subject to a foreclosure action. To allow foreclosure under these circumstances would defeat the purpose of the note and deed of trust.

Defendants contend contrary authority is found in *Coyne* v. *Mason* (1936) 13 Cal.App.2d 176 [56 P.2d 541]. We disagree that *Coyne* is contrary to our holding herein. If it be so construed, we are unpersuaded of the validity of such holding and do not follow it. In *Coyne,* plaintiff and her husband

executed a note to an insurance company for $10,000, payable at $110.50 per month at 6 percent interest. Additionally they agreed to pay to the insurance company $31.05 per month as the premium on a $10,000 insurance policy on the life of plaintiff's husband, for a total monthly installment of $141.55. The note, secured by a deed of trust, provided if any monthly installment was not paid, the holder could treat the entire note as due and collectable. Plaintiff eventually defaulted in the payment of the life insurance premium and the insurance company foreclosed on the trust deed property. In plaintiff's action to quiet her title to the property, judgment was entered for the insurance company.

On appeal, plaintiff contended the deed of trust secured only the principal and interest installments and not the insurance premiums; that the failure to pay the insurance premiums did not give the insurance company the right to foreclose; and the company had no right to require her to pay the insurance premiums. The court summarily rejected plaintiff's contentions as she agreed to pay the insurance premiums and the note and deed of trust provided the insurance company had the right to accelerate and foreclose in the event of default in the payment of insurance premiums. (*Coyne* v. *Mason, supra,* 13 Cal.App.2d at pp. 178-179.)

*Coyne* provides no authority for the question before us. The court's summary treatment of plaintiff's contentions render it impossible to determine if the court even considered the issue in the present case. Moreover, *Coyne* is factually distinguishable in that the deed of trust was, in part, security for the payment of life insurance premiums. Here, the situation is the reverse in that the fire insurance acts as an additional security for the deed of trust, insuring that the value of the property as security for the payment of principal and interest will not be impaired. *Coyne* gives no guidance to the resolution of the present case.

Defendants urge our holding would allow trustors to breach the insurance requirement with impunity whenever the lack of insurance creates no impairment of the security. Defendants err. Our holding goes only to the *remedy* which may be employed for failure to provide insurance when security is unimpaired. The insurance requirement is still a valid and enforceable contract provision. One option available to the beneficiary is to pay the insurance premiums himself and add their cost to the amount due on the underlying debt. (See Miller & Starr, Current Law of Cal. Real Estate, *supra,* § 3.39, p. 391.) This would, in fact, be a more prudent course of action; otherwise, the property would remain uninsured during a foreclosure proceeding. (Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,* § 3.5, p. 109.)

██ Finally, defendants contend a correct statement of one breach of the deed of trust is sufficient to immunize a notice of default from attack, even if the notice may contain other, incorrect, statements of breach. The lack of fire insurance was stated in the default and is conceded by plaintiffs. Ergo, though the other grounds for default were erroneous, the notice is not invalidated. This reasoning is both simplistic and incomplete. The law is that the statutory notice requirement (Civ. Code, § 2924c) "is sufficiently complied with if the notice of default contains a correct statement of some breach or breaches *sufficiently substantial in their nature* to authorize the trustee or beneficiary to declare a default and proceed with a foreclosure." (*Birkhofer* v. *Krumm* (1938) 27 Cal.App.2d 513, 523-524 [81 P.2d 609]; italics added.) In our view, a failure to provide fire insurance, where it does not impair the security, is not a "sufficiently substantial" breach to authorize foreclosure.

██ We hold a trustee or beneficiary may not foreclose under an acceleration provision in a deed of trust when the trustor fails to provide fire insurance for the security property, unless the failure to provide fire insurance impairs the security of the deed of trust. It is a question of fact whether the lack of fire insurance impairs the security of the deed of trust. Accordingly, a trustor is not precluded as a matter of law from sustaining an action in damages for wrongful foreclosure against a trustee or beneficiary who initiates foreclosure solely on the basis of lack of insurance. In the present case we accept as true the assertion in plaintiffs' opening statement that the lack of fire insurance did not impair the security of the deed of trust. The trial court therefore erred in granting nonsuit, as to defendant Lind.

II-VI*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgments of nonsuit in favor of defendants Central Bank and Northwestern Title are affirmed. The judgment of nonsuit in favor of defendant Frank Lind is reversed. Defendants Central Bank and Northwestern Title

*See footnote, *ante*, page 791.

shall recover costs; defendant Frank Lind and plaintiffs shall each bear their own costs.

Blease, Acting P. J., and Sims, J., concurred.

The petition of respondent Lind for review by the Supreme Court was denied August 20, 1986.