[No. B074203. Second Dist., Div. Seven. Aug. 17, 1994.]

DeVAUGHN PEACE, M.D., INC., et al., Plaintiffs and Appellants, v. ST. FRANCIS MEDICAL CENTER, Defendant and Respondent.

## Counsel

Robert D. Walker and Delia Flores for Plaintiffs and Appellants.

Rushfeldt, Shelley & Drake and Jo-Ann Horn Maynard for Defendant and Respondent.

## Opinion

LILLIE, P. J.—DeVaughn Peace, M.D., and DeVaughn Peace, M.D., Inc. (Peace) appeal from judgment entered following the granting of a motion for nonsuit in favor of defendant St. Francis Medical Center (Medical Center).

### Statement of Facts and Procedural History

On March 1, 1989, Peace filed a third amended complaint for breach of contract, breach of the covenant of good faith and fair dealing, negligence, interference with prospective economic advantage and malicious prosecution against, among others, the Medical Center, a nonprofit corporation. Peace alleged the Medical Center for the period November 1986 through January 1987 had wrongfully and arbitrarily restricted his medical privileges, wrongfully and arbitrarily suspended and effectively terminated his employment, deprived him of the protection and benefits of the corrective action provisions of the medical staff's bylaws and the fair hearing provisions of the bylaws, and failed to comply with the requirements of article IX and sections 8.1 through 8.2 of the bylaws.

The Medical Center filed a general denial and alleged numerous affirmative defenses including, that the operative complaint failed to state facts sufficient to constitute a cause of action against the Medical Center and that Peace was precluded from bringing a civil action having failed to file a petition for writ of mandate.

Trial of the matter was bifurcated. The first phase went forward on the issue of whether the medical staff association was an agent of the Medical Center.

*Evidence at the First and Only Phase of the Trial*

In February 1985, Peace applied for and thereafter obtained medical staff privileges at the Medical Center. As part of his application, he signed a document acknowledging that he had received, read and agreed to abide by the bylaws of the medical staff of the Medical Center.

In October 1986, he was present at a department of pediatrics committee meeting at which incidents leading to his later summary suspension were discussed.

Thereafter, Peace received a letter dated November 17, 1986, from the chief of staff of the Medical Center advising Peace that his medical staff privileges were suspended immediately, effective upon his receipt of the letter. The letter recited that the basis of this action was his failure and refusal to provide coverage for his private patients in the emergency room and his failure to participate in the pediatrics emergency room call panel, a violation of the rules and regulations of the department of pediatrics.

The letter advised Peace that in accordance with article 8.2-2 of the medical staff bylaws, he could request a meeting with the medical executive committee to review and reconsider the summary suspension and that additionally, within 15 days following receipt of the letter, he could request a hearing by a judicial review committee in accordance with article 9.4-2 of the medical staff bylaws.

On November 26, 1986, Peace, through his counsel, requested a meeting with the medical executive committee for reconsideration of his summary suspension and requested a hearing by a judicial review committee pursuant to the provisions of article 9.4-2 of the medical staff bylaws.

Peace did not attend a December "hearing" because of lack of time to prepare, and the meeting with the medical executive committee occurred in January 1987.

Peace, thereafter, received a letter from the chief of staff of the Medical Center dated January 15, 1987, to the effect that following Peace's meeting with the medical executive committee on January 12, 1987, the committee voted as follows: "1. The summary suspension of your medical staff privileges shall be rescinded effective immediately. 2. Over the next 90 days after your receipt of this letter you shall not be required to participate in the Pediatrics Emergency Room Call Panel. During this 90 day period you are to make arrangements for pediatric coverage either by yourself or a designated alternate who is a member of the Active staff in the Department of Pediatrics at St. Francis Medical Center, as required by the Rules and Regulations of the Department. 3. Further consideration of additional or other action regarding your medical staff privileges shall be deferred during the 90 day period herein set forth." The letter advised Peace if he had any questions regarding this matter, he should contact Celso Chavez, M.D., the chief of staff.

At the time of trial, Peace had not challenged any actions of the medical executive committee by way of a hearing before the judicial review committee. At trial, he agreed that before the board of directors could act relative to a proposed corrective action against a physician, an appeal through the medical executive committee and the judicial review committee had to be made.

Following the January 1987 letter from Dr. Chavez rescinding the summary suspension, it was Peace's opinion that he had no grounds for a hearing as contained in paragraph 9.3 of the bylaws.

Following presentation of the plaintiffs' case, the Medical Center presented a written motion for nonsuit on the grounds that an agency relationship between the Medical Center and the medical staff had not been shown. In order to allow Peace's counsel an opportunity to read and respond to the motion, the court proposed that it defer ruling until the following day and that the defense commence examination of its witnesses. The Medical Center agreed, as long as it would not constitute a waiver of its motion.

The following day the court granted the motion for nonsuit, finding there was not "enough evidence for it to go to the jury." The court gave Peace an opportunity to reopen his case in order to avoid the granting of the motion for nonsuit, but Peace had no other evidence to offer at trial that day. Peace's motion for a continuance for approximately two months was denied and the action was ordered dismissed.

## DISCUSSION

Appellant's contention, in essence, that the trial court erred in granting the motion for nonsuit is without merit.

■ "In an appeal from a judgment of nonsuit, we affirm the judgment if the trial court's stated grounds for granting nonsuit are correct. [Citations.] However, we must view the evidence in the light most favorable to the plaintiff. Nonsuits, like directed verdicts, may be granted only when the court has given plaintiff's evidence all the value to which it is legally entitled, including giving it the legitimate inferences which flow from that evidence. [Citations.]" (*Wallace* v. *City of Los Angeles* (1993) 12 Cal.App.4th 1385, 1395 [16 Cal.Rptr.2d 113].)

While it is ordinarily true that a judgment of nonsuit will be upheld on appeal only if the trial court's stated grounds for granting nonsuit are correct, grounds not specified in a motion for nonsuit will be considered by an appellate court if it is clear that the defect is one which could not have been remedied had it been called to the attention of the plaintiff by the motion. (*Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 93 [147 P.2d 604]; *Markwell* v. *Sykes* (1959) 173 Cal.App.2d 642, 651 [343 P.2d 769].)

■ While the court and the parties extensively discussed the agency relationship between the medical staff and the Medical Center, the failure of Peace to exhaust intraorganizational remedies and the failure to thereafter file a petition for writ of mandate pursuant to the medical staff bylaws are fatal to his claims.

Article IX of the Medical Center's medical staff bylaws contains provisions for hearings and appellate review, and Peace acknowledged that he agreed to abide by these bylaws. Paragraph 9.2 entitled "Exhaustion of Remedies" provides: "If an adverse action, recommendation or decision is made by the Medical Executive Committee with respect to a practitioner's staff membership, staff status, or clinical privileges at any time, regardless of whether he is an applicant or a medical staff member, he must exhaust the intraorganizational remedies afforded by these bylaws before resorting to formal legal action challenging the decision, the procedures used to arrive at it, or asserting any claim against the hospital or participants in the decision process; and the exclusive procedure for obtaining judicial review shall be by petition for Writ of Mandate pursuant to Part 3, Title 1, Chapter 2 of the California Code of Civil Procedure."

Paragraphs 9.4-1 through 9.5-11 are the provisions for hearings before a judicial review committee and paragraphs 9.6 through 9.8-2 contain the

procedures for appellate review following the decision of the judicial review committee.[1]

Peace was questioned extensively regarding his failure to exhaust any intraorganizational remedies and he claimed he had no need because in January 1987, his suspension was rescinded. However, he obviously cannot contend that there was no adverse action taken against him which needed to be addressed, because thereafter, he filed a lawsuit in superior court, which is the subject of this appeal, claiming he had been damaged by the action of the Medical Center and its staff. The bylaws are clear that, "If an adverse action, recommendation or decision is made by the Medical Executive Committee with respect to a practitioner's staff membership, staff status, or clinical privileges at any time . . . he must exhaust the intraorganizational remedies afforded by these bylaws before resorting to formal legal action challenging any decision . . . or asserting any claim against the hospital or participants . . . ." Thereafter his only judicial review is by way of a writ of mandate.

■ " 'It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a member must first invoke and exhaust the remedies provided by that organization applicable to his grievance. [Citations.] This rule is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts [citation] and to the rule requiring the parties to a contract for arbitration of disputes to exhaust those remedies before seeking judicial relief. [Citations.] Such rules . . . make possible the settlement of such matters by simple, expeditious and inexpensive procedures, and by persons who, generally, are familiar therewith. Such internal remedies are designed not only to promote the settlement of grievances but also to promote more harmonious relationships and the courts look with favor upon them.' [*Holderby* v. *Internat. Union etc. Engrs.* (1955) 45 Cal.2d 843, 846 (291 P.2d 463).]" (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 474-475 [131 Cal.Rptr. 90, 551 P.2d 410].)

■ We, therefore, conclude that the granting of the motion for nonsuit was proper. While the trial court did not grant this motion on the ground that plaintiffs had failed to exhaust intraorganizational remedies and failed to file a petition for writ of mandate, it is clear that this defect is one which could not have been remedied had it been the basis of the defendant's motion and on appeal is a proper basis upon which to affirm the trial court.

[1]For a description of intraorganizational remedies and the writ of mandate procedures see *Huang* v. *Board of Directors* (1990) 220 Cal.App.3d 1286 [270 Cal.Rptr. 41].

## Disposition

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.

Petitions for a rehearing were denied September 12, 1994, and September 15, 1994, and appellants' petition for review by the Supreme Court was denied November 2, 1994.