[No. B118182. Second Dist., Div. Two. May 31, 2000.]

ANN ALPERT, Plaintiff and Appellant, v.
VILLA ROMANO HOMEOWNERS ASSOCIATION, Defendant and
Respondent.

## COUNSEL

Law Offices of Steven M. Klugman and Steven M. Klugman for Plaintiff and Appellant.

Early, Maslach, Price & Baukol and James Grafton Randall for Defendant and Respondent.

## OPINION

**GOODMAN, J.*—**Ann Alpert (Alpert) appeals from the judgment of non-suit entered in favor of respondent Villa Romano Homeowners Association (VRHA) at the close of Alpert's case-in-chief. Alpert's complaint alleged that she suffered severe injuries when she tripped and fell on the upturned and broken sidewalk adjacent to the condominium complex managed by VRHA.[1] In this appeal Alpert asks that we determine if the owner and possessor of property owes a duty to warn or protect pedestrians from allegedly dangerous conditions known to be present. We conclude that there is such a duty and that the trial court erred in granting the defense motion for nonsuit made at the close of Alpert's case-in-chief.

### FACTUAL AND PROCEDURAL HISTORY

In the late morning of July 27, 1992, Alpert, then 69 and in good health, took her four-year-old dog, BJ, a poodle weighing approximately eight pounds, for a walk near her home in Marina del Rey. She had BJ on a leash. Alpert walked her dog several times a day, but had never fallen before while walking him. This day, on the way home, she passed in front of the VRHA condominium property (the property), which is near the condominium complex in which she resided. The weather was dry and clear; the summer sun was overhead. Alpert's walk ended when one of her feet came in contact with an upturned, jagged piece of sidewalk, causing her to lose her balance and fall, face first, to the sidewalk. After her fall, she noticed that there was grass growing in this break in the sidewalk.

The fall knocked the wind out of her. In the fall, Alpert fractured her right wrist, fractured and lacerated her left knee, broke her fourth and fifth ribs, and sustained a large hematoma in the area of her right breast. She sought medical attention for her injuries, eventually having surgery to repair her left knee. During her recovery from the fall, she contracted pneumonia. At the time of trial, she was unable to walk more than a block without pain, and was using a wheelchair to go longer distances.

Luz Enriquez (Enriquez) had been the gardener for VRHA for 20 years. He worked at the property three times each week. In addition to performing

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Alpert had alleged causes of action against the City of Los Angeles and County of Los Angeles as well as VRHA. The claims against the governmental entity defendants were resolved prior to trial. The County of Los Angeles was dismissed; a good faith settlement was entered with the City of Los Angeles.

gardening services in the area of the property between the condominium buildings and the sidewalk, including the lawn, which he routinely mowed, he did similar work in the area between the sidewalk and the curb. He routinely removed leaves and other debris from the sidewalk, including removing such material that accumulated from time to time in the crack at the location of the upturned sidewalk. He also watered the vegetation on both sides of the sidewalk, utilizing the sprinklers which VRHA had installed in both areas. Enriquez was aware of the break in the sidewalk and recalled that it had been there for a few years prior to the date of Alpert's fall.

Bernardo Segala had been hired by VRHA to trim trees on its property. During the year 1992 and prior to Alpert's fall, at the request of VRHA he trimmed trees on the lawn between the sidewalk and the condominium property and on the portion of the lawn between the sidewalk and the street.

John Pettijohn, who had expertise in concrete repairs, measured the difference in elevation caused by the break in the sidewalk at the scene of the fall at between three-fourths of an inch and one inch.

Elihu Crane, a resident of VRHA, was a member of its board of directors from 1990 through April 1992, and president of its board of directors for part of that time. During that two-year period there was no person or committee of the board which had responsibility for inspecting the sidewalk in front of the property. VRHA's view was that the City of Los Angeles (the city) controlled the sidewalks and all VRHA needed to do was to keep the sidewalk clean.

Judith Crane was in charge of the gardening committee of the VRHA. She inspected the property shortly after becoming chairman of that committee in the summer of 1992. She had been aware for some time of the existence of cracks in the sidewalk in the area in which Alpert fell and of other cracks in the sidewalk which ran along the property.

Dr. Stephen Wexler, a licensed civil engineer and licensed general contractor, testified as an expert witness at Alpert's request. Dr. Wexler had experience in building concrete structures, including sidewalks, and in landscaping for the projects he built. Dr. Wexler also had expertise in determining the cause of sidewalk damage from root structures and root growth and expertise regarding human factors in relation to premises liability. Dr. Wexler inspected the scene of the fall on several occasions. He observed that

there was mature vegetation on the property, including pine trees (some of which were 100 feet tall) between the sidewalk and buildings on the property, and bottlebrush trees in the area between the sidewalk and the street curb. In his opinion, the root of a pine tree had caused the sidewalk to be uplifted and to break. This opinion was confirmed by his observation of 15 to 20 sidewalk cracks in the area, of which seven or eight had caused serious distortions in the sidewalk in the form of uplifted panels of concrete or of cracks in panels which had been uplifted. There was a second such root-caused cracking and tilting within 15 feet of the scene of Alpert's fall. He had observed that roots of pine trees can grow in length to be as much as four times the height of the tree itself. He explained that tree roots seek out the area under the sidewalk because water tends to collect there. He noted that the sprinklers at the property water the sidewalk as well as the lawn and other vegetation.

In Dr. Wexler's opinion, the sidewalk defect at the location of Alpert's fall had existed for years prior to the fall and had been caused by the progressive growth of a subterranean tree root under the sidewalk. He noted that the area of greatest angular uplift in the sidewalk was adjacent to the lawn, indicating in his opinion that the root that caused the uplift had come from a tree growing on the lawn as the root sought moisture. He explained that roots taper down in size the farther from the tree they grow. It was also his opinion that the growth of the trees and their root systems had been enhanced by the fertilizing, watering, and trimming of the trees, which VRHA had done on its property. Further, the roots remained near the surface due to the very hard-packed soil in the area, thus increasing the likelihood of cracking the sidewalk.

On cross-examination, Dr. Wexler testified that it was unlikely that the root that had caused the sidewalk at the point of Alpert's fall to be upturned and to break had come from a tree in the area between the sidewalk and the street as roots of the bottlebrush trees planted in that area were smaller than those of the pine trees. Rather, it was his opinion that the root which had caused the sidewalk defect had come from a tree growing on the main lawn.

At the conclusion of Alpert's case-in-chief, VRHA made a written motion for nonsuit. During argument on that motion, Alpert's motion for leave to reopen was denied. The court granted the motion for nonsuit, after which Alpert filed a timely appeal.[2]

---

[2]We construe the dismissal of the jury upon the granting of the motion for nonsuit as a termination of the action as to all defendants. It is proper, therefore, to treat the appeal as an

## CONTENTS ON APPEAL

Alpert contends the trial court erred (1) in concluding that VRHA, as owner of the property, owed Alpert no duty of care, (2) in refusing to permit Alpert to reopen to cure any defect that resulted in the nonsuit, (3) in refusing to permit Alpert to make offers of proof of certain evidentiary matters, and (4) by excluding evidence of knowledge of the condition of the sidewalk prior to the fall on the part of the board of directors of VRHA.[3]

## DISCUSSION

### 1. *Standard of review.*

In reviewing a judgment entered upon a grant of a motion for nonsuit after the close of the plaintiff's case-in-chief (Code Civ. Proc., § 581c),[4] the appellate court reviews the entire record of the trial court (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 [47 Cal.Rptr.2d 752]) and views the evidence in the light most favorable to appellant. (*Freeman v. Lind* (1986) 181 Cal.App.3d 791, 799 [226 Cal.Rptr. 515].) We do not weigh the evidence or consider the credibility of the witnesses who have testified; rather we are required to accept as true the evidence most favorable to the plaintiff, disregarding conflicting evidence. (*LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517 [52 Cal.Rptr.2d 861].) " ' "The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' "[5] (*Freeman v. Lind, supra,* 181 Cal.App.3d at p. 799.)

appeal from the judgment which necessarily followed. (See *Mikialian v. City of Los Angeles* (1978) 79 Cal.App.3d 150, 153 [144 Cal.Rptr. 794]; *Graski v. Clothier* (1969) 273 Cal.App.2d 605, 607 [78 Cal.Rptr. 447].)

[3]Alpert also sought review of the trial court's refusal to permit a representative of the city to testify. Resolution of that evidentiary matter is not necessary on this appeal. We make further reference to this matter in footnote 10, *post.*

[4]At the time of trial in this matter, Code of Civil Procedure section 581c, subdivision (a) provided: "After the plaintiff has completed his or her opening statement, or the presentation of his or her evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit."

The section was amended in 1998 (Stats. 1998, ch. 200, § 1) in a technical manner not relevant to the instant case.

[5]VRHA correctly points out that the doctrine that a scintilla of evidence creates a sufficient evidentiary basis to reverse a judgment of nonsuit has been rejected. (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 420, p. 481.) While that is a correct statement of the law, factually Alpert overcame that threshold for reasons we discuss in the text.

This healthy skepticism of removing factual questions from juries is inextricably bound to the California Constitution, which preserves "inviolate" the right to trial by jury.[6]

### 2. The trial court's ruling.

At the conclusion of Alpert's case-in-chief, VRHA presented a written motion for nonsuit to the court and counsel.[7] ■ Such a motion has the effect of a demurrer to the evidence: It concedes the truth of the facts proved and contends that those facts are not sufficient as a matter of law to sustain the plaintiff's case. (See *Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 98 [253 Cal.Rptr. 470].) A judgment of nonsuit is an involuntary dismissal (*Costa v. Regents of University of Cal.* (1951) 103 Cal.App.2d 491, 494 [229 P.2d 867]) on a motion by a defendant who contends the plaintiff is unable to prove its case at trial (*Doria v. International Union* (1961) 196 Cal.App.2d 22, 32 [16 Cal.Rptr. 429]). In reviewing a judgment of nonsuit, we look at the entire record. (*Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th at p. 1581.) We consider grounds which were both advanced by the moving party and ruled on by the trial court.[8]

---

[6]California Constitution, article I, section 16 provides, in part: "Trial by jury is an inviolate right and shall be secured to all. . . ."

This right extends to factual questions only; issues of law are triable by the court. (Evid. Code, § 310, subd. (a); Code Civ. Proc., §§ 589, 591, 592.) The right to trial by jury guarantees that right in actions triable by jury at common law, including claims for damages for injuries to persons. (See generally 7 Witkin, Cal. Procedure, *supra,* Trial, § 89 et seq.)

[7]In its written motion for judgment of nonsuit, VRHA contended that (1) the defect in the sidewalk was trivial as a matter of law, (2) Alpert had failed to establish that the cause of the sidewalk defect was a root growing from VRHA's property, and (3) VRHA owed no duty to pedestrians such as Alpert, but only to the city, under Streets and Highways Code section 5610.

[8]There is a split of authority over whether we may consider grounds argued by the defendant, but not relied upon by the trial court, in granting the motion. Some Courts of Appeal, including this division, have held that appellate review is limited to those grounds relied upon by the trial court, the theory being that we only need examine those grounds which a plaintiff may have been able to correct had they been called to its attention (e.g., *DeVaughn Peace, M.D., Inc. v. St. Francis Medical Center* (1994) 28 Cal.App.4th 454, 459 [33 Cal.Rptr.2d 459]; *Walker v. Porter* (1974) 44 Cal.App.3d 174, 177 [118 Cal.Rptr. 468]). Other courts have taken the view that a judgment of nonsuit can be sustained on any ground specified in the motion, even if not relied upon by the trial court (e.g., *Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1542, fn. 2 [50 Cal.Rptr.2d 395], and cases there discussed). See also *Adkins v. State of California* (1996) 50 Cal.App.4th 1802, 1809, footnote 7 [59 Cal.Rptr.2d 59].

The source of this debate is the following language from *Lawless v. Calaway* (1944) 24 Cal.2d 81 [147 P.2d 604] (*Lawless*): "The correct rule is that grounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect

The record in this case clearly shows that the trial court weighed the evidence and erred as to the applicable law. Thus, the trial court stated: "Dr. Wexler testified that he was not sure where the roots came from which caused the elevation. . . . [A]nd the law seems to indicate that the ambit of liability does not include the abutting land owners but includes the city for—the city owing the duty to the third person. . . ."

This selection from the record by the trial court was inapposite. The record reveals substantial testimony by Alpert's expert witness different from that relied on by the trial court and quoted above; testimony which, when viewed in accordance with principles applicable to motions for non-suit, provides factual support for Alpert's legal contentions substantial enough to withstand such a motion. Thus, Dr. Wexler testified that the cause of the uplifted and cracked sidewalk was the root of a tree growing on VRHA's property. While he would not rule out the possibility that the particular root came from another location as he had not dug up the lawn all the way to the particular suspected, "mature" pine tree, it was his expert opinion that a tree growing on VRHA's lawn was the source of the destructive root. He also testified that the trees planted in the area between the sidewalk and the street were of a different type and had characteristically smaller roots. Other witnesses testified to the size of the hazard caused by the uplifted piece of sidewalk which the tree root had created and to VRHA's prior notice of the hazardous condition of the sidewalk. The trial court did not view the evidence adduced by plaintiff in the manner required when analyzing evidence in ruling on a motion for nonsuit made at the conclusion of a plaintiff's case-in-chief. (*Freeman v. Lind, supra,* 181 Cal.App.3d at p. 799.)

---

is one which could not have been remedied had it been called to the attention of plaintiff by the motion. This rule is complementary to the requirement that a party specify the grounds upon which his motion for nonsuit is based." (*Id.* at p. 94; accord, *Timmsen v. Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 868 [86 Cal.Rptr. 359].) The rationale for *Lawless* is that, on a motion for nonsuit, the plaintiff is to be given the opportunity to cure the defect in its case. To this end, the court is required to hear offers of proof and grant a motion to reopen if timely made. (*Eatwell v. Beck* (1953) 41 Cal.2d 128, 133 [257 P.2d 643] [one of the chief objects of a nonsuit motion is to point out to plaintiff the defects in its case so that they may be remedied and the case decided on its merits].)

The articulation of the *Lawless* rule has not prevented the split of authorities as discussed above: whether, on review of a judgment of nonsuit, the appellate court looks only at the reason or reasons stated by the trial judge in granting the motion, or at any reason advanced by the moving party in the trial court. In either situation, the appellate court looks also at the problem of legal preclusion—whether, as a matter of law, there is no basis for the plaintiff's claim. In such a circumstance, affirmance of the judgment of nonsuit is appropriate even if that ground was not advanced below. It is the issue of legal preclusion that was the principal focus of the trial court in reaching its ruling below.

The other aspect of the trial court's ruling was its conclusion that VRHA did not owe a duty of care to Alpert. As we next discuss, this ruling was also error.

### 3. *Whether VRHA owed a duty to pedestrians.*

The fundamental legal issue raised by the judgment of nonsuit is whether VRHA as landowner and party in possession and control owed a duty to pedestrians such as Alpert to either warn them of a dangerous condition of the premises or repair it. We will conclude that such a duty was owed under the circumstances present in this case.[9]

#### a. *Authorities prior to Alcaraz v. Vece.*

The Legislature and the courts have addressed the responsibilities, if any, of possessors of land abutting sidewalks. We begin our analysis with Civil Code section 1714, subdivision (a), which makes a possessor of land subject to the general negligence standard of that section.

Civil Code section 1714, subdivision (a) provides: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury on himself."

It is appropriate to depart from this standard only when there are clear public policy reasons for doing so. In making that determination, a court must weigh the following factors: (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered injury, (3) the proximity of the connection between the defendant's conduct and the injury sustained, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community from imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved. (*Rowland v. Christian, supra,* 69 Cal.2d at pp. 112-113.)

---

[9]As indicated in this opinion, the existence of a duty of care is a matter of law. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 678 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 125 [211 Cal.Rptr. 356, 695 P.2d 653].) The foreseeability of a particular plaintiff's injury is a question of fact. (*Isaacs,* at p. 126.) The standard to be applied to determine if the duty has been met is whether the property owner has acted in management of the property as a reasonable person in view of the probability of injury to others. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 118-119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) The answer to that question will be determined on retrial.

"The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . ." (*Rowland v. Christian, supra,* 69 Cal.2d at p. 119.)

In addition to Civil Code section 1714, subdivision (a), the Legislature has enacted Streets and Highways Code section 5610, which provides: "The owners of lots or portions of lots fronting on any portion of a public street or place when that street or place is improved or if and when the area between the property line of the adjacent property and the street line is maintained as a park or parking strip, shall maintain any sidewalk in such condition that the sidewalk will not endanger persons or property and maintain it in a condition which will not interfere with the public convenience in the use of those works or areas save and except as to those conditions created or maintained in, upon, along, or in connection with such sidewalk by any person other than the owner, under and by virtue of any permit or right granted to him by law or by the city authorities in charge thereof, and such persons shall be under a like duty in relation thereto."

This statute places on the abutting property owner the duty to maintain the sidewalk.[10] This statutory duty has been held not to impose, by itself, a duty of care upon the abutting landowner for the safety of persons using the sidewalk, but rather a duty owed to the city.

Division Seven of this court discussed the relationship of Streets and Highway Code section 5610 to ordinary negligence principles in the course of its opinion in *Jones v. Deeter* (1984) 152 Cal.App.3d 798 [199 Cal.Rptr. 825] (*Jones*). There, plaintiff Jones tripped on a break in a sidewalk, allegedly caused by the roots of a tree growing in a parkway maintained by the owner of the adjacent property. The court affirmed the trial court's grant of summary judgment to the property owner, holding that Streets and Highways Code section 5610 was not the basis of a duty of care to

---

[10]Streets and Highways Code section 5610 is one of several statutes codifying responsibilities with respect to maintenance and repair of sidewalks. Section 5611 gives to the superintendent of streets the authority to notify the abutting owner of the need to repair the sidewalk. Section 5615 provides that the superintendent of streets may repair the sidewalk if the abutting owner does not and assess that cost to the abutting owner. That amount may result in a lien against the property. (Sts. & Hy. Code, § 3525 et seq.)

In this case, Alpert's attempt to introduce evidence regarding the absence of notice to the city concerning defects in the sidewalk was rejected. Alpert did give timely notice of intention to call the witness through whose testimony this and other matters were to be established. Whether the witness was competent to testify to all of the subjects which Alpert indicated in her offer of proof is a matter for consideration by the trial court in the course of proceedings on the retrial.

pedestrians *unless the sidewalk defect was the result of the owner's negligence. (Jones, supra,* at p. 803.)[11] Under the facts of *Jones,* any dangerous condition resulting from the trees was attributable to the city as the city had planted and maintained the trees, and the parkway had been formally dedicated to the city by its owner. The court pointed out that the "Sidewalk Accident Decision" doctrine had been developed to distinguish those cases in which the owner of the adjacent property is not to be held liable in tort to users of the sidewalk unless the owner creates the condition that is a cause of the injury. *(Ibid.)* In *Jones,* the owner was not held to have a duty to the pedestrian because the city performed the maintenance of the area of the plaintiff's fall.

The *Jones* court was careful to distinguish the factual situation there presented—in which the offending trees were owned and maintained by the City on a dedicated parkway—from the facts of *Moeller v. Fleming* (1982) 136 Cal.App.3d 241 [186 Cal.Rptr. 24] *(Moeller),* in which that court, in reversing a grant of summary judgment, held that an abutting property owner could be held liable if the dangerous condition in a sidewalk had been caused by the roots of a tree owned by that landowner with his knowledge of that condition. *(Id.* at p. 245.) In *Moeller,* the offending roots came from a tree on the defendant's property. In distinguishing *Moeller* in *Jones,* Division Seven of this court stated: "This case turns on this distinction." *(Jones, supra,* 152 Cal.App.3d at p. 804.)

In *Williams v. Foster* (1989) 216 Cal.App.3d 510 [265 Cal.Rptr. 15] *(Williams),* the Court of Appeal reversed a jury verdict in favor of a pedestrian who had been injured when he fell on a public sidewalk which had an uneven surface caused by the roots of a tree planted in a parkway in front of the property owner's residence. The defendants had moved for nonsuit, which motion the trial court had denied. In reversing the subsequent verdict and ordering that the trial court enter a judgment of nonsuit, the *Williams* court held that Streets and Highways Code section 5610 was controlling, viz., that the statutory duty placed on adjacent landowners to maintain and repair sidewalks was owed solely to the city and that that

[11]As we discuss in the text, Street and Highways Code section 5610 establishes the rule that the owner of the property adjoining the sidewalk has a duty to maintain it. This is a statutory exception to the general rule that the owner of the easement (typically, the local municipality) has the duty to maintain the easement.

While section 5610 places the duty to maintain and repair defects in the sidewalk on the abutting landowner, the "Sidewalk Accident Decision" doctrine provides that that duty is not owed to persons who use the sidewalk unless the abutting landowner somehow causes the dangerous condition of the sidewalk. *(Schaefer v. Lenahan* (1944) 63 Cal.App.2d 324, 326 [146 P.2d 929]; *Jones, supra,* 152 Cal.App.3d at p. 803.) Our holding today is consistent with this long-established doctrine.

statute does not impose liability for injuries incurred by reason of a defect in the sidewalk. (216 Cal.App.3d at p. 521.)

The *Williams* court did recognize the holding of *Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358 [178 Cal.Rptr. 783, 636 P.2d 1121] (*Sprecher*), that a landowner may be held liable for negligent failure to correct or control a defect[12] which results in injury to neighboring property. In so holding, our Supreme Court repudiated the common law rule of nonliability for natural conditions of land and held that a possessor's liability would be determined under ordinary negligence principles. (*Williams, supra,* 216 Cal.App.3d at p. 519.) In the *Williams* court's view, the general negligence liability analysis of *Sprecher* was not appropriate in the circumstances there presented because the abutting owner in *Williams* did not own or possess an easement over the area in which the offending roots grew (or other cause arose). (*Id.* at pp. 520, 521.)

*Williams* sought to distinguish *Jones*, criticizing it in the following language: "We fail to see any legal foundation for [the approach that a particular abutting owner could be held liable for failing to maintain the public sidewalk or parkway where abutting owners as a class rather than a city historically had performed sidewalk maintenance] if it is applied to an abutting owner who has not undertaken such maintenance in the absence of a statute or ordinance." (*Williams, supra*, 216 Cal.App.3d at p. 521.)

The *Williams* court did recognize, however, that "[a] possessor or owner of premises is under a duty to others by virtue of that possession or ownership to act reasonably to keep the premises safe and prevent persons from being injured thereby. (See *Rowland v. Christian, supra*, 69 Cal.2d 108, 111-119.) Thus, where a particular abutter does not possess or own the street easement, and does not undertake maintenance of it, we see no legal basis for imposing liability for failure to properly maintain the sidewalk or planting strip in the absence of statute or ordinance." (*Williams, supra*, 216 Cal.App.3d at p. 521.)[13]

Of particular importance to the *Williams* court was the absence of any evidence that Foster or his predecessor in interest had planted the trees, or that those trees had caused the sidewalk defect. (*Williams, supra,* 216

---

[12]In *Sprecher, supra*, 30 Cal.2d at page 358, the defect was a landslide.

[13]The *Williams* court ultimately reversed the judgment and directed the trial court to enter a judgment of nonsuit for the reason that the evidence was insufficient as a matter of law to sustain a verdict for the plaintiff. (*Williams, supra*, 216 Cal.App.3d at pp. 522-523.) We reach a different conclusion based both on the facts of this case, which the *Williams* court suggested might be the basis for such a result, and due to the development in the law subsequent to the decision in *Williams*.

Cal.App.3d at pp. 522-523.) Thus, there was no factual basis in *Williams* to consider or apply the duty analysis and the principles of *Rowland v. Christian, supra,* 69 Cal.2d. at page 119.

### b. *Impact of Alcaraz v. Vece.*

Prior to trial in the instant case our Supreme Court had occasion to apply the principles of *Rowland v. Christian, supra,* 69 Cal.2d 108, in a situation analogous in many respects to the instant case. In *Alcaraz v. Vece* (1997) 14 Cal.4th 1149 [60 Cal.Rptr.2d 448, 929 P.2d 1239] (*Alcaraz*), Alcaraz sued his landlord, the owner of the apartment building in which he resided, for injuries sustained when Alcaraz stepped into an open utility meter box located in the city-owned lawn next to the sidewalk in front of that residence. In affirming the Court of Appeal's reversal of the grant of summary judgment to the property owner, our Supreme Court held that there was a triable issue of fact as to whether the property owner had exercised control over the area in which the utility box was located even though that area was owned by the city. In our Supreme Court's view, if the property owner did exercise such control, then it had a duty to warn Alcaraz[14] of the danger, or protect him from that danger.

Citing its decision in *Rowland v. Christian*, the Supreme Court stated: " 'The proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property [the possessor] has acted as a reasonable man in view of the probability of injury to others . . . .' (*Rowland* v. *Christian*[, *supra*,] 69 Cal.2d 108, 119 . . . .)" (*Alcaraz, supra,* 14 Cal.4th at p. 1156.)

The court further explained: "This duty to maintain land in one's possession in a reasonably safe condition exists even where the dangerous condition on the land is caused by an instrumentality that the landowner does not own or control." (*Alcaraz, supra,* 14 Cal.4th at p. 1156.)

■ We distill from our Supreme Court's holding in *Alcaraz* that a landowner or possessor of land has a duty to take reasonable measures to protect persons from dangerous conditions on adjoining land when the landowner or possessor exercises possession or control over that adjacent land. The scope of this duty is to be determined under principles enunciated in *Rowland v. Christian*. "The proper test to be applied to the liability of the

---

[14]This duty is owed to Alcaraz and to others, viz., to persons who foreseeably may be in the area, not to Alcaraz due to his status as a tenant of the landowner. (*Rowland v. Christian, supra,* 69 Cal.2d at p.119; *Alcaraz, supra,* 14 Cal.4th at pp. 1162-1163 [duty is not dependent on commercial benefit to landowner].)

possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others . . . ." (*Rowland v. Christian, supra,* 69 Cal.2d at p. 119.)

c. *Indicia of control over the land.*

The facts of this case reveal that VRHA had planted and maintained all of the trees and vegetation in the area, on both sides of the sidewalk, had installed sprinklers on both sides of that walkway, and watered and trimmed the trees which grew the roots which caused the sidewalk to be uplifted and crack, presenting the danger which befell Alpert.[15] Further, VRHA had known for approximately two years prior to Alpert's fall of the condition of the sidewalk at the location of the fall and elsewhere along that path.

Because the area of the injury in *Alcaraz* was owned by the city and not by the defendant, our Supreme Court was required to consider whether a possessor of land could be held liable under tort principles. Concluding in the affirmative, the court relied on principles enunciated in *Rowland v. Christian, supra,* 69 Cal.2d at page 119: The relevant question is not "mere ownership," but whether the possessor has maintained the property in a reasonably safe condition. (Accord, *Alcaraz, supra,* 14 Cal.4th at p. 1156.)

In the instant case, the party which had done the things just enumerated and which had prior knowledge of the resulting dangerous condition was in possession and control of the premises, including but not limited to the sidewalk on which Alpert fell.

d. *Application of Alcaraz and other cases.*

VRHA contends that *Jones* does not allow for a duty to be placed on an adjacent landowner to repair or warn under the circumstances presented in this case. VRHA's reliance on *Jones* is misplaced. As stated in *Jones:* "In settings where the abutting owners have planted the trees or have habitually trimmed or cared for them, these abutting owners have the duty to maintain the trees in a safe condition toward pedestrians." (*Jones, supra,* 152 Cal.App.3d at p. 805.) The facts of the instant case, unlike those of *Jones,* show the substantial activities—and responsibility—of the abutting landowner.

Similarly, VRHA's reliance on *Contreras v. Anderson* (1997) 59 Cal.App.4th 188 [69 Cal.Rptr.2d 69] (*Contreras*), is misplaced. In *Contreras,*

---

[15]As indicated in the text, *ante,* Alpert's expert witness was of the opinion that the offending root came from a pine tree growing between the sidewalk and the buildings.

the plaintiff slipped on an improperly sloped brick path which led from the street curb to the sidewalk in the front of the defendant homeowners' residence. The area of the fall was owned by the city and separated from the sidewalk by a five-foot-high wooden fence. (*Id.* at p. 192.) In the course of its de novo review of the summary judgment granted to the defendants, the court analyzed *Alcaraz,* noting that while the defendant in *Alcaraz* exercised control over the parkway in which the fall had occurred, by contrast, the defendants in *Contreras* did not own, or have legal possession of the area of the fall (*Contreras, supra,* at p. 197). The *Contreras* court described the difference: "The city-owned strip [in *Alcaraz*] . . . was contiguous with and indistinguishable from the rest of the defendant's lawn. . . . [T]he evidence showed the defendants maintained the entire lawn from the defendants' property line to the sidewalk, including that portion of the lawn located within the city-owned strip of land, and that, subsequent to the plaintiff's alleged injury, defendants constructed a fence that bordered the sidewalk and enclosed the entire lawn in front of their property, including the two-foot-wide strip owned by the city." In addition, the *Alcaraz* court found that the defendants had actual notice of the defect. (*Contreras, supra,* at p. 197.)

The *Contreras* court characterized the holding in *Alcaraz* as follows: "The *Alcaraz* court concluded that such evidence was 'sufficient to raise a triable issue of fact as to whether defendants exercised control over the strip of land . . . and thus owed a duty of care to protect or warn plaintiff . . . .' [¶] Nevertheless, it is clear from *Alcaraz* that simple maintenance of an adjoining strip of land owned by another does not constitute an exercise of control over that property." (*Contreras, supra,* 59 Cal.App.4th at p. 198.) The *Contreras* court focused also on the fact that the defendants in *Alcaraz* had constructed a fence around the area. This act "went beyond simple neighborly maintenance and, thus, was sufficient to raise a triable issue of fact as to control. [Citation.]" (*Id.* at p. 199.)

By contrast, in *Contreras,* there "is no such 'dramatic assertion of a right normally associated with ownership or . . . possession' of the land. . . .'" (*Contreras, supra,* 59 Cal.App.4th at p. 200.) Finally, the *Contreras* court focused on the fact that the fence in that case had been constructed by the city and that there was no evidence the defendants had knowledge of the hazard. (*Id.* at p. 201.)

The facts of the instant case are substantially different from those presented in *Contreras.* In *Contreras,* the court found that the adjacent owner had neither possession of, nor control over, the land on which the dangerous condition existed. In the instant case, the adjoining land was owned by

VRHA which exercised control over the sidewalk and the area between the sidewalk and the curb. VRHA installed sprinklers, and planted and maintained the trees which Alpert's expert testified caused the dangerous condition in the sidewalk. Further, VRHA had been aware of the condition of the sidewalk for a substantial period of time prior to the fall (and was in the process of discussing repairs when Alpert fell). In short, there was enough evidence to overcome the motion for nonsuit.[16]

### 4. *Denial of the request to reopen.*

When the trial court indicated it was going to grant the nonsuit, counsel for plaintiff sought leave to reopen. The trial court denied that request.

Alpert's motion to reopen was timely under the circumstances. Although it was not made the instant the motion for nonsuit was served, it was made in the course of the discussion with the court and the argument of counsel that followed the filing of that motion. In addition, Alpert had previously asked for opportunities to make offers of proof on matters which were relevant to the issues presented in the motion for nonsuit and had been told by the court time would be made available later for such offers. Those requests related to evidence of knowledge by VRHA of the existence of the sidewalk defects at least a month prior to Alpert's fall. That time never came.

The denial of a request to reopen which is accompanied by an offer of proof of the evidence that will cure the deficiency is reversible error. (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 382 [11 Cal.Rptr.2d 524]; *Eatwell v. Beck, supra,* 41 Cal.2d at pp. 133-134 [plaintiffs, who had mistakenly relied on former law regarding damages, were improperly denied leave to introduce evidence to satisfy the current rule].)

The right to present further evidence is waived unless the plaintiff both requests leave to reopen and makes an offer of proof, describing the evidence and explaining how it would cure the deficiencies. (*Consolidated World Investments, Inc. v. Lido Preferred Ltd., supra,* 9 Cal.App.4th at p. 382.) In the instant case, Alpert complied with the rule to the extent possible.

---

[16]No evidence was presented below of any applicable local ordinances. Whether that will be a factor on retrial in unknown. We note that in *Selger v. Steven Brothers, Inc.* (1990) 222 Cal.App.3d 1585 [272 Cal.Rptr. 544], the court construed statutes applicable in the jurisdiction in which the property at issue in this appeal is located. The issue was framed differently, however, as that defendant had no role in creating the hazard which befell that plaintiff. (*Id.* at p. 1592.) Nor was any evidence presented regarding the statutory presumptions of Civil Code sections 831 and 1112. (See *Jones, supra,* 152 Cal.App.3d at pp. 801-802.)

It is important to recognize, however, that even if Alpert had been granted leave to reopen and introduce all of the evidence we have discussed, the trial court would likely still have granted the nonsuit as its legal analysis would have remained unchanged. There does not appear to have been anything in the evidence referenced in the offers of proof which would have changed the legal theory upon which the trial court granted the judgment of nonsuit. On retrial, it appears that the previously excluded evidence may be probative and relevant to the issues in the case.

### 5. *The trivial defect ruling.*

One of the bases of VRHA's written motion for nonsuit was that the defect in the sidewalk was trivial and thus it was not foreseeable that harm would come to anyone. In its reply brief, VRHA asserts that the trial court in fact rejected VRHA's argument that the defect was trivial. Because VRHA, in effect, has conceded that the trial court rejected this argument, we need not consider it.[17]

### 6. *Causation*

The final ground for the motion for nonsuit was that Alpert had not established that any defect was caused by a root from VRHA's property. As we have discussed at length, *ante*, in reviewing a judgment of nonsuit we view the evidence in the light most favorable to the plaintiff and accept as credible the testimony of the plaintiff's witnesses. (*Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th at p. 1581; *LaMonte v. Sanwa Bank California, supra,* 45 Cal.App.4th at p. 517.) Alpert's expert clearly stated his opinion that the break in the sidewalk was the result of the growth under the sidewalk of a root of one of the pine trees planted on VRHA's lawn and

---

[17]This court has had previous opportunities to consider the trivial defect defense. In *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394 [237 Cal.Rptr. 413], we sustained a summary judgment in which the trial court had determined that the trivial defect defense was established as a matter of law based on the facts there presented. (*Id.* at pp. 397-398). In *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701 [50 Cal.Rptr.2d 8], we upheld a summary judgment in which the trial court had reasoned that " ' "reasonable minds [could] come to but one conclusion," ' " that the design of a staircase at a city convention center posed a minor or trivial risk at most. (*Id.* at p. 704.)

We note that the trial court in the instant case had rejected VRHA's argument that the trivial risk doctrine applied on the facts presented and that VRHA has conceded this issue in its brief on appeal. Nevertheless, as that defense is fact-specific and there will be a full trial, our opinion should not be construed as other than an indication that the trial court may consider this issue based on the evidence adduced in the new trial of this case. Nor do we infer that the trivial defect defense need not be closely scrutinized in view of the "marked changes in the law" made by *Rowland v. Christian, supra,* 69 Cal.2d 108. (*Ursino v. Big Boy Restaurants, supra,* 192 Cal.App.3d at p. 398.)

nurtured by VRHA. For purpose of ruling on a judgment of nonsuit, there was substantial evidence of causation. VRHA's causation argument is without merit.

7. *Exclusion of evidence of prior knowledge of the condition of the sidewalk contained in the minutes of meetings of VRHA's board of directors.*

■ There is an evidentiary contention of Alpert which is appropriately resolved on this appeal. Alpert contends the trial court erred in refusing to permit questioning of VRHA board of director and committee members about a discussion at VRHA's November 1997 board of directors' meeting. The trial court sustained VRHA's objections to such questions and to Alpert's attempt to gain admission of the minutes of that meeting of VRHA's board of directors. The basis for the objection was that admission of such evidence would violate the subsequent act proscription codified in Evidence Code section 1151. We will determine that the evidence should have been admitted.

Alpert sought admission of the November minutes while questioning the former president of VRHA's board of directors, Ehihu Crane, about that meeting. During that questioning, Alpert sought to inquire concerning a discussion of bids to repair sidewalk "bumps." Alpert was specifically interested in references in that discussion and in the minutes of that meeting to the fact that there had been a discussion of the condition of the sidewalk and the need to repair it at a board of directors' meeting in June of the same year, prior to Alpert's fall.[18] The trial court sustained objections to introduction of this evidence.

---

[18] When Alpert sought to have the minutes in question marked as trial exhibit 29, VRHA's counsel asked to approach. After the reported sidebar conference, the minutes were never marked. They should have been marked for identification. The parties to this appeal each make reference to those minutes, even though they are not a part of the record on appeal. By their briefs on this appeal, we are advised that the minutes of the VRHA board of directors state in part:

"The meeting was called for the purpose of discussing the bids for cement work to repair the . . . sidewalk 'bumps.'

"Before discussing the bids the question was raised as to whether or not this work is considered an 'emergency' and therefore did not need approval of homeowners (over $5,000). The Board voted 2 to 1 (1 abstention) that is as [*sic*] not an emergency, since the matter has been pending since last June. . . .

". . . In several places the cement levels have change [*sic*] due to tree root, etc. . . ."

Alpert sought introduction of these minutes to establish knowledge of the problem by VRHA at least a month prior to her fall. VRHA objected, contending the evidence was of subsequent repair and inadmissible by statute and common law policy.

Two other attempts were made to introduce the minutes, with the same result, the court sustaining the objection that the minutes were inadmissible as evidence of subsequent repair

Alpert seeks to overturn those rulings, arguing the evidence is probative of the facts that the sidewalk defect was known to VRHA prior to the fall, the defect was not trivial, its repair was feasible, the defect was caused by tree roots, and VRHA was in control of the cause of the defect as well as of its repair. In arguing that the trial court's ruling was correct, VRHA contended that the evidence would relate to remedial steps taken after the fall, and is not probative on the points argued by Alpert.

In *Alcaraz, supra,* 14 Cal.4th 1149, the defendants had objected in the trial court to admission of evidence that they had maintained the area of that fall and that they had built a fence around the parkway where the fall had occurred subsequent to that incident. In making this objection, the *Alcaraz* defendants argued that the evidence must be excluded under the authority of Evidence Code section 1151, which precludes introduction of evidence of subsequent remedial conduct.[19] In its ruling granting summary judgment to the defense, that trial court had sustained defendants' objections in this regard.

The Supreme Court expressly rejected these evidentiary rulings, stating, "This evidence [relating to maintenance of the lawn on city-owned property and subsequent construction of a fence in that area] was highly relevant regarding whether defendants exercised control over the strip of land owned by the city." (*Alcaraz, supra,* 14 Cal.4th at p. 1166.)

"[W]hether defendants exercised control over the strip of land owned by the city on which the meter box was located is a 'disputed fact that is of consequence to the determination of the action.' [Citation.] Indeed, if defendants exercised control over this strip of land, it appears clear they owed a duty to protect or warn plaintiff." (*Alcaraz, supra,* 14 Cal.4th at p. 1167.)

In rejecting the argument that admission of evidence that the defendants later constructed a fence around the area of the fall violated Evidence Code section 1151, the court stated: "This statute does not apply, however, because evidence regarding construction of the fence was admitted, not to prove negligence, but to demonstrate that defendants exercised control over

and citing Evidence Code section 352, which gives the trial court the discretion to exclude evidence on the basis that its probative value is outweighed by its prejudicial impact. Each ruling was incorrect.

[19]Evidence Code section 1151 provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event."

the strip of land owned by the city. As we stated in *Ault* v. *International Harvester Co.* (1974) 13 Cal.3d 113, 118 [117 Cal.Rptr. 812, 528 P.2d 1148, 74 A.L.R.3d 986], 'Section 1151 by its own terms excludes evidence of subsequent remedial or precautionary measures *only when such evidence is offered to prove negligence or culpable conduct.*' (Italics added; see also Fed. Rules Evid., rule 407, 28 U.S.C., which employs language nearly identical to Evidence Code section 1151 and then explains: 'This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.')" (*Alcaraz, supra,* 14 Cal.4th at p. 1169.)

The VRHA minutes were admissible for the purposes sought by Alpert. The proper means to address the concern expressed by VRHA would have been a limiting instruction, advising the jury of the purposes for which they could, and could not, consider the minutes. (See *Morehouse v. Taubman Co.* (1970) 5 Cal.App.3d 548, 555 [85 Cal.Rptr. 308] [evidence that the defendant contractor's carpenters installed handrails at the point where the plaintiff had fallen after his injury was not admissible to prove negligence of the defendant under Evid. Code, § 1151, but was properly limited and received by the court, on the issues of control of the premises, and of whose duty it was under the contract to take such safety measures].) Similarly, in *Baldwin Contracting Co. v. Winston Steel Works, Inc.* (1965) 236 Cal.App.2d 565 [46 Cal.Rptr. 421], the court held that subsequent remedial conduct cannot be considered on the issue of liability, but "is relevant and admissible [on the issues of scope of duty] [citation] and also on the possibility or feasibility of eliminating the cause of the accident. [Citations.]"[20] (*Baldwin Contracting*, at p. 573.)

In the present case, the minutes of the November board meeting confirm VRHA's knowledge of the sidewalk defect prior to Alpert's fall, VRHA's discussions regarding repair, its control over the area at issue, as well as other facts that were in dispute in the litigation. The trial court erred in refusing to admit the minutes and in sustaining objections to questions of witnesses in the same areas.[21] As our Supreme Court stated in *Alcaraz,* such evidence "would be admissible to demonstrate that defendants exercised

---

[20]Pursuant to Evidence Code section 355, the opponent of the evidence (or its proponent) may ask the court to give an instruction advising the jury that the evidence is being admitted for a limited purpose, explaining that purpose. This instruction may be given at the time the evidence is admitted, in closing instructions, or both. (See Evid. Code, § 355; *Dincau v. Tamayose* (1982) 131 Cal.App.3d 780, 791 [182 Cal.Rptr. 855].)

[21]Because of the manner in which the issue arose, we do not know if other evidentiary objections (e.g., relating to authenticity of the minutes) could be surmounted by Alpert. These are issues to be resolved by the trial judge on retrial.

control over the premises. Accordingly, we may consider such evidence in determining whether a triable issue of material fact existed concerning whether defendants exercised control over the strip of land and thus owed a duty of care to plaintiff." (*Alcaraz, supra*, 14 Cal.4th at p. 1170.)

## DISPOSITION

The judgment of nonsuit is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellant shall recover her costs on appeal.

Boren, P. J., and Nott, J., concurred.

A petition for a rehearing was denied June 30, 2000, and the opinion was modified to read as printed above.