Filed 1/21/22  Quicken Mortgage v. Bank of America, N.A. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| QUICKEN MORTGAGE CORPORATION et al., Plaintiffs and Appellants, v. BANK OF AMERICA, N.A., Defendant and Respondent. | G059249 (consol. w/ G059590) (Super. Ct. No. 30-2016-00832654) O P I N I ON |

Appeal from a judgment of the Superior Court of Orange County, Martha K. Gooding, Judge.  Affirmed.

Law Offices of Lee E. Burrows and Lee E. Burrows for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendant and Respondent.

\*      \*      \*

**INTRODUCTION**

An essential element of the causes of action for fraud and negligent misrepresentation is justifiable reliance; that is, the circumstances were such as to have made it reasonable for the plaintiff to accept the representation as true without conducting an independent investigation. It is axiomatic that a plaintiff cannot reasonably rely on a representation if the plaintiff knows or has information that the representation is false. Applying these principles, we affirm a judgment of nonsuit against Quicken Mortgage Corporation (Quicken Mortgage) and Bahram Dadvar in their lawsuit against Bank of America, N.A. (Bank of America).

Bahram Dadvar alleged that in reliance on a letter from Bank of America, he, on behalf of Quicken Mortgage, entered into a joint venture agreement with a company owned by Sirous Razipour. Dadvar contended the letter, which purported to confirm various accounts held by Razipour at Bank of America, vastly overstated the balance of a certificate of deposit. When the relationship between Dadvar and Razipour collapsed, for reasons unrelated to the balance of that certificate of deposit, Quicken Mortgage and Dadvar sued Bank of America for fraud and negligent misrepresentation.

However, after receiving the letter from Bank of America and before entering into the joint venture agreement, Dadvar received documents disclosing that the certificate of deposit balance reflected on the letter was inaccurate; in particular, Dadvar received Razipour's bank account statements and a renewal notice for the certificate of deposit. Dadvar testified he would have glanced at the account balances in Razipour's bank statements and, if those balances were different from those in the letter, which they were, he would know the letter was inaccurate. Dadvar sent a copy of the certificate of deposit renewal notice to a prospective lender. Dadvar, together with Razipour, prepared a loan application which listed the certificate of deposit as an asset of Razipour and identified the correct balance.

2

This evidence led the trial court to grant Bank of America's motion for nonsuit, and leads us, exercising de novo review, to affirm. The undisputed facts establish that Dadvar's reliance on the letter was manifestly unreasonable as a matter of law in light of information in his possession showing that the letter inaccurately stated the balance of the certificate of deposit.

We also affirm on a ground raised by Bank of America in its motion for nonsuit but not relied upon by the trial court: Under the undisputed facts, there was no causal link between Dadvar's reliance on the representation made in the letter from Bank of America about the certificate of deposit balance and damage Quicken and Dadvar Mortgage might have suffered. Dadvar relied on the letter as providing assurance that Razipour had sufficient funds to satisfy the financial obligations imposed on him by the joint venture agreement. Razipour satisfied all of his financial obligations, and then some.

## FACTS

### I. Bank of America Issues the Proof of Funds Letter

As the standard of review directs, we accept as true the evidence most favorable to Quicken Mortgage and Dadvar, draw every reasonable inference in their favor, and disregard conflicting evidence. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 (*Nally*).)

Dadvar is a real estate investor who has been engaged in selling real estate and has developed about 15 or 16 high-end properties over a period of 20 years. Razipour is the sole shareholder of Matasco Enterprises, Inc. (Matasco).

Sometime in 2012, Razipour told Dadvar that Razipour was "coming into some money" and asked Dadvar to let him know if Dadvar had found a good real estate investment. Later in 2012, Dadvar told Razipour that Dadvar was looking for investors to help him purchase, remodel, and ultimately sell a large residential property (the

3

Peppertree Property) in San Juan Capistrano. Dadvar told Razipour that the Peppertree Property had fallen out of escrow and was "a very good deal."

Dadvar had worked with investment partners about five times in the past when he lacked sufficient funds. When considering a partner for a development project, honesty and financial wherewithal were important to Dadvar. To determine whether Razipour had sufficient assets to purchase and remodel the Peppertree Property, in January 2013, Dadvar asked Razipour to provide a verification of the amount of funds in his bank accounts.

On January 15, 2013, Dadvar and Razipour went to the Fashion Island branch of Bank of America to obtain a letter confirming Razipour's funds. Dadvar and Razipour were given a letter (the Proof of Funds Letter) on Bank of America letterhead and signed by Bijan Saadati, banking center manager and assistant vice-president. The Proof of Funds Letter stated Razipour was "the president of Global Liquidation Company," had been "a valued client of ours since 1999," and had an "outstanding relationship with our financial institution." The Proof of Funds Letter confirmed that Razipour had four accounts at Bank of America. One account was a certificate of deposit, No. 4425, which according to the Proof of Funds Letter had a balance of $3,121,015.20.

Razipour did not look at the Proof of Funds Letter until the next day. When he did, he saw that the account balance for the certificate of deposit was wrong. At the time the Proof of Funds Letter was prepared, the balance of the certificate of deposit was only $289,308.59 and the maturity date was September 5, 2013.

Dadvar testified that, within two weeks after receiving the Proof of Funds Letter, he called Saadati and asked him whether the information in the letter was accurate and whether there were any recent changes to the information in it. Dadvar explained that he was "doing a partnership with Mr. Razipour" and was calling "to verify" that the

4

Proof of Funds Letter was accurate. Saadati told Dadvar the information in the Proof of Funds Letter was accurate and that Razipour was "a very good customer."[1]

## II. Dadvar Receives Razipour's Bank Account Statements, Including a Renewal Notice for the Certificate of Deposit

After receiving the Proof of Funds Letter, Dadvar and Razipour agreed they would need to obtain a loan to fund the purchase of the Peppertree Property. Dadvar was placed in charge of obtaining the loan because he had experience in the mortgage industry and, as such, was responsible for putting together the loan application and submitting all the paperwork to prospective lenders. Razipour provided Dadvar copies of his Bank of America account statements, including a renewal notice for the certificate of deposit, and Dadvar scanned the documents into his computer. The renewal notice, which was dated December 12, 2012, stated the certificate of deposit "had renewed automatically" with a current balance as $289,308.59 and a new maturity date of September 5, 2013.

Razipour went to Dadvar's house and together they filled out a loan application. The loan application listed the certificate of deposit, with a balance of $289,308.59, as an asset of Razipour.

On January 28, 2013, Dadvar sent a prospective lender an e-mail to which were attached copies of Razipour's bank statements, including the renewal notice from Bank of America for Razipour's certificate of deposit.

Dadvar testified that if he had received Razipour's bank statements he would have glanced at them to check the average balance for the prior month. He testified too that if Razipour's bank statements had disclosed account balances different

---

[1] Saadati testified he did not remember that call from Dadvar, ever meeting with Dadvar and Razipour, preparing the Proof of Funds Letter, or preparing any proof of funds letters for any clients while he worked as a Bank of America manager. Saadati testified the "S" in his signature on the Proof of Funds Letter appeared to be "off."

from those in the Proof of Funds Letter, he would have known the Proof of Funds Letter was inaccurate. Dadvar claimed that Razipour's bank statements, including the renewal notice, did not alert him that the Proof of Funds Letter was inaccurate because the bank statements predated the letter by one to two months and account balances can change over time.

### III. Quicken Mortgage and Matasco Enter into the Joint Venture Agreement

On February 4, 2013, Quicken Mortgage and Matasco entered into a joint venture agreement (the Joint Venture Agreement) for the purchase, development, and sale of the Peppertree Property. The Joint Venture Agreement identifies Dadvar as the sole shareholder of Quicken Mortgage.[2] Dadvar signed the Joint Venture Agreement as the authorized agent of Quicken Mortgage.

The Joint Venture Agreement required Quicken Mortgage and Matasco each to bear 50 percent of the responsibility of funding the down payment of $748,000 on the Peppertree Property. Quicken Mortgage agreed to meet its down payment obligation by contributing a Bentley automobile with an agreed-upon value of $200,000 and $174,000 in cash. Title was to be taken "50/50" in the names of Quicken Mortgage and Matasco, and net profits were to be split "50%-50% to the entities having title." Quicken Mortgage and Dadvar agreed to pay up to $10,000 for the costs of remodeling the property, while Matasco and Razipour agreed to contribute up to $300,000 for remodeling costs. The expectation was to resell the Peppertree Property within one year.

Dadvar relied on the Proof of Funds Letter when he entered into the Joint Venture Agreement on behalf of Quicken Mortgage. He would not have entered into the Joint Venture Agreement if the information in the Proof of Funds Letter were not true

---

[2] That representation was false: Dadvar's ex-wife, Sabrina Thornbury, was the sole shareholder of Quicken Mortgage when it entered into the Joint Venture Agreement. Dadvar testified he did not acquire his shares in Quicken Mortgage until sometime in mid to late 2018 or early 2019, long after the date of the Joint Venture Agreement.

6

because the letter provided him assurance that Razipour had the financial wherewithal to "qualify to do a project like that."

### IV. Project Costs Spiral Upward; The Parties Enter into an Addendum to the Joint Venture Agreement

In February 2013, Quicken Mortgage and Matasco obtained a $1,695,000 loan and successfully purchased the Peppertree Property for a price of $2,575,000. Matasco and Razipour satisfied their obligation under the Joint Venture Agreement of paying $300,000 toward remodeling costs.

The original plan was to complete a "minor" remodel of the Peppertree Property before reselling it. By April 2013, the remodel budget had increased from $300,000 to $472,500 so the parties changed their plan and decided to undertake a "major" remodel instead. Dadvar expected Razipour to cover the increased construction costs, and Razipour did as expected.

Construction costs continued to spiral upward. In July 2013, Dadvar prepared a new budget of $800,000. He expected Razipour to pay all of the remodeling costs. In October 2013 the project budget had increased to $1,090,000—three and one-half times the amount agreed upon in the Joint Venture Agreement. At about this time, late October or early November 2013, Razipour told Dadvar that the Proof of Funds Letter was "likely fudged."

Razipour wanted a new joint venture agreement to account for the additional funds he had put into the project and to place a cap on spending. Although Dadvar initially refused, in March 2014 Quicken Mortgage and Matasco entered into an addendum to the Joint Venture Agreement (the Addendum). The Addendum recited that the original scope of improvements had been exceeded and that Matasco had contributed about $750,000 over the purchase money. The Addendum placed a cap on spending of $1,250,000 for all improvements. Because $950,000 had been spent, Quicken Mortgage and Matasco each agreed to contribute $150,000 ($300,000) to finish the project.

7

However, a few days later Dadvar informed Razipour that $379,000 would be needed to complete the project.

## V.  The Relationship Between Dadvar and Razipour Deteriorates

By the summer of 2014 the relationship between Dadvar and Razipour had deteriorated to the point that both were leveling personal insults against each other and had hired attorneys.  Dadvar and Razipour ended up suing each other.

At about this time, in 2014 or 2015, Dadvar, while at a Bank of America branch, asked the branch manager whether the Proof of Funds Letter was accurate.  The manager researched the matter and told Dadvar "the balances were not even close."

The lawsuit between Dadvar and Razipour went to arbitration.  The arbitrator ordered the appointment of a receiver to sell the joint venture's assets.  In August 2018, the Peppertree Property was sold at a receiver's sale for $6,588,888.  After paying off all debts, fees, payoffs, and commissions, including amounts contributed by Quicken Mortgage and Matasco/Razipour, the receiver held $866,000 of which $670,000 ultimately were disbursed to Razipour and the rest disbursed to Quicken Mortgage.

## PROCEDURAL HISTORY

In January 2016, Quicken Mortgage and Dadvar filed a complaint against Matasco, Razipour, and Bank of America for fraud, negligent misrepresentation, and concealment.  Quicken Mortgage and Dadvar alleged that Bank of America had made false representations to them about Razipour's account balances and, in reliance on the representations, Quicken Mortgage and Dadvar had entered in the Joint Venture Agreement.

The case was tried to a jury in February 2020 on the claims of intentional and negligent misrepresentation.  At the close of the plaintiffs' case-in-chief, Bank of America brought a motion for a nonsuit.  The motion was made on four grounds: (1) Quicken Mortgage and Dadvar failed to prove justifiable reliance because the

8

evidence at trial showed that they learned of the correct balance of Razipour's certificate of deposit before entering into the Joint Venture Agreement; (2) Quicken Mortgage and Dadvar adduced no evidence that the Proof of Funds Letter caused them any harm because the evidence showed that Matasco had exceeded its financial obligations under the Joint Venture Agreement; (3) the evidence at trial proved that the negligent misrepresentation cause of action was barred by the two-year limitations period; and (4) Quicken Mortgage and Dadvar impliedly waived their misrepresentation claims by entering into the Addendum after discovering that the Proof of Funds Letter was inaccurate.

The trial court granted the motion for nonsuit on the first, third, and fourth grounds. The court found: (1) Dadvar's testimony established that before Quicken Mortgage entered into the Joint Venture Agreement Dadvar had documents and information showing the balance of Razipour's certificate of deposit was some $2.8 million less than the balance reflected on the Proof of Funds Letter; (2) after learning that the Proof of Funds Letter likely had been "fudged," Dadvar went ahead and, on behalf of Quicken Mortgage, entered into the Addendum; and (3) the negligent misrepresentation claim was barred by a two-year statute of limitations. In addition, the court found that Dadvar lacked standing to sue Bank of America on his own behalf because he was never a party to the Joint Venture Agreement or the Addendum.

A judgment and an amended judgment incorporating a cost award were entered in favor of Bank of America. Quicken Mortgage and Dadvar timely appealed from the judgment and separately appealed from the amended judgment. The two appeals were consolidated for all purposes.

## DISCUSSION

### I. Standard of Review/Standard for Granting Nonsuit

We review an order granting nonsuit de novo by using the same standard as the trial court. (*Nally, supra*, 47 Cal.3d at p. 291; *Holistic Supplements, LLC v. Stark*

9

(2021) 61 Cal.App.5th 530, 541.) A defendant is entitled to a nonsuit if the court determines, as a matter of law, the evidence presented by the plaintiff is insufficient to permit a jury to find in the plaintiff's favor. (*Nally, supra*, at p. 291.) In determining whether the plaintiff's evidence is sufficient, the court may not weigh the evidence or consider witness credibility but must accept as true the evidence most favorable to the plaintiff and disregard conflicting evidence. (*Ibid*.) The court must interpret the evidence most favorably to the plaintiff and draw every reasonable inference, and resolve all presumptions, conflicts, and doubts, in the plaintiff's favor. (*Ibid*.; see *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.)

"A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.'" (*Nally, supra*, 47 Cal.3d at p. 291.) Evidence is legally insufficient when no substantial evidence exists tending to prove each element of the plaintiff's claim. (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 263, disapproved on another ground in *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 219, 221; *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750-751.)

## II. As a Matter of Law, Quicken Mortgage and Dadvar Failed to Present Evidence Sufficient to Establish Justifiable Reliance

Justifiable reliance is an essential element of both fraud and negligent misrepresentation. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173-174.) "'Besides actual reliance, [a] plaintiff must also show "justifiable" reliance, i.e., circumstances were such to make it *reasonable* for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation.' [Citation.] The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." (*OCM Principal Opportunities Fund, L.P. v. CIBC World*

*Markets Corp.* (2007) 157 Cal.App.4th 835, 864 (*OCM*); accord *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 794.)

"The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." (Rest.2d Torts, § 541.) "Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." (*Id.*, § 541, com. a., p. 89.)

Whether a plaintiff's reliance was reasonable is a question of fact *except* when the undisputed facts do not permit a reasonable difference of opinion. (*OCM, supra*, 157 Cal.App.4th at pp. 864-865; *West v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th at p. 794.)

The evidence presented at trial by Quicken Mortgage and Dadvar was insufficient as a matter of law to establish the element of justifiable reliance. The theory of recovery alleged in the complaint and presented at trial was that in reliance on the Proof of Funds Letter, Quicken Mortgage and Dadvar were induced into entering into the Joint Venture Agreement. The Joint Venture Agreement was signed on February 4, 2013. Dadvar received the Proof of Funds Letter on January 15, 2013. But after receiving the Proof of Funds Letter, and before the date of the Joint Venture Agreement, Dadvar received Razipour's bank account statements, including the renewal notice for Razipour's certificate of deposit. Dadvar testified that Razipour came to his home and together they prepared the loan application. Razipour testified he brought his bank statements with him and Dadvar scanned them into Dadvar's computer.

The renewal notice identified the current balance of the certificate of deposit as $289,308.59 and the new maturity date as September 5, 2013. Dadvar testified

that, before entering into the Joint Venture Agreement, he and Razipour together prepared a loan application. The loan application identified Razipour's certificate of deposit and gave the balance as $289,308.59.

On January 28, 2013, before the date of the Joint Venture Agreement, Dadvar sent to a prospective lender an e-mail to which were attached copies of Razipour's bank statements, including a renewal notice from Bank of America for Razipour's certificate of deposit.

Dadvar testified that, within two weeks of January 15, 2013, he had a telephone conversation with Saadati at Bank of America in which Saadati stated the information in the Proof of Funds Letter was accurate. But Dadvar also testified that if Razipour's bank account statements showed account balances that were different from those reflected in the Proof of Funds Letter, he would know the Proof of Funds Letter was inaccurate. He further testified that he would have checked the balances on Razipour's bank account statements. The renewal notice thus alerted Dadvar that the Proof of Funds Letter was inaccurate.

Dadvar contends he was justified in relying on the Proof of Funds Letter instead of Razipour's bank account statements because those statements were four to eight weeks old and account balances can change. This argument does not overcome a nonsuit. The renewal notice, which was dated just a month earlier than the Proof of Funds Letter, was not for a checking or savings account, to which funds could be deposited or withdrawn, but for a certificate of deposit with a specified balance. The renewal notice states that the certificate of deposit "has renewed automatically" with a balance of $289,308.59. The loan application, which Dadvar helped to prepare, identifies the certificate of deposit as having a balance of $289,308.59. Thus, regardless of what the Proof of Funds Letter reflected, the renewal notice and loan application demonstrate that Dadvar knew of the correct balance of the certificate of deposit before entering into the Joint Venture Agreement.

12

Dadvar argues repeatedly that justifiable reliance is a question of fact that must be decided by a jury. But, as we have explained, justifiable reliance may be decided by a nonsuit motion when the undisputed facts do not permit a difference of opinion. (*OCM, supra*, 157 Cal.App.4th at pp. 864-865; *West v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th at p. 794.) Justifiable reliance may be decided by nonsuit against a plaintiff "if [the plaintiff's] conduct is manifestly unreasonable in the light of [the plaintiff's] own intelligence or information." (*Hartong v. Partake, Inc.* (1968) 266 Cal.App.2d 942, 965.)

Dadvar testified he was a highly experienced real estate developer and had been placed in charge of obtaining a loan due to his experience in the mortgage industry. The evidence presented by Dadvar established that after receiving the Proof of Funds Letter, and before entering the Joint Venture Agreement, he received Razipour's bank account statements, including the certificate of deposit renewal notice, at least took note of the account balances, worked with Razipour to prepare a loan application that disclosed the accurate balance of the certificate of deposit, and sent the certificate of deposit renewal notice along with Razipour's bank account statements to a prospective lender. Dadvar testified that he would have known that the Proof of Funds Letter was inaccurate if Razipour's bank account statements showed different account balances, which they did.

This evidence permits no difference of opinion: Dadvar's reliance on the Proof of Funds Letter was manifestly unreasonable as a matter of law in light of his intelligence, his experience, and information in his possession. Dadvar could not have been justified in relying on the balance of the certificate of deposit reflected in the Proof of Funds Letter because he knew that information was false.

13

### III.  As a Matter of Law, Quicken Mortgage and Dadvar
### Failed to Present Evidence Sufficient
### to Establish Causation

We also affirm the judgment of nonsuit on the ground that Quicken Mortgage and Dadvar failed to present substantial evidence of causation; that is, Dadvar's reliance on the Proof of Funds Letter was the proximate cause of damages. Although the trial court did not grant a nonsuit on the ground of lack of evidence of causation, Bank of America specified causation as a ground in its motion.  We may affirm a nonsuit on any ground specified in the motion, regardless whether the trial court granted relief on that ground.  (*Lawless v. Calaway* (1944) 24 Cal.2d 81, 92-94; *Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1542.)[3]

Proximately caused or resulting damage is an element of fraud and negligent misrepresentation.  (*Small v. Fritz Companies, Inc., supra,* 30 Cal.4th at pp. 173-174.)  "[D]amage causation is an essential element of any cause of action for fraud or negligent misrepresentation."  (*Id.* at p. 202.)  A party asserting fraud must prove

---

[3]  Several Court of Appeal opinions hold that appellate review is limited to those grounds relied upon by the trial court because the appellate court should only examine those grounds which a plaintiff might have been able to correct had they been called to the plaintiff's attention.  (E.g., *DeVaughn Peace, M.D., Inc. v. St. Francis Medical Center* (1994) 28 Cal.App.4th 454, 459; see *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1328, fn. 8 [noting split of authority over whether review of grant of nonsuit is limited to grounds raised by defendant and ruled on by trial court].)  Those opinions are based on an erroneous interpretation of *Lawless v. Calaway, supra*, 24 Cal.2d 81.  The rule pronounced in *Lawless* was that "grounds *not specified* in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion."  (*Id.* at p. 94, italics added.)

In *Lawless* the Supreme Court held "merely that a judgment of nonsuit usually cannot be affirmed on a ground not specified below *by the moving party* because it would deprive the plaintiff of the opportunity to remedy any defects in its proof."  (*Saunders v. Taylor, supra*, 42 Cal.App.4th at p. 1542, fn. 2.)  "That rationale does not bar the consideration on appeal of alternative grounds which were stated by the moving party but which were not among those relied upon by the trial court in granting the motion."  (*Ibid.*)

the fraudulent conduct was the proximate or legal cause of the plaintiff's damages. (*OCM, supra*, 157 Cal.App.4th at p. 870.)  Thus, a plaintiff asserting fraudulent misrepresentations must prove the alleged misrepresentations were the proximate cause of the harm claimed to have been suffered by the plaintiff.  (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1062.)  "'Assuming . . . a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes*.'"  (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 365 [plaintiff's damages caused by academic dismissal from law school, not misrepresentations inducing him to enroll].)

There was no causal link between Dadvar's reliance on the Proof of Funds Letter and whatever damage Quicken Mortgage and Dadvar might have suffered.  Dadvar testified that he relied on the Proof of Funds Letter as providing assurance that Razipour had the assets to purchase and remodel the Peppertree Property; that is, Razipour had the ability to "qualify to do a project like that."  But the causes of the breakdown in the relationship between Quicken Mortgage/Dadvar and Razipour were unrelated to Dadvar's reliance on the Proof of Funds Letter.  Regardless whether the Proof of Funds Letter was accurate or not, Razipour had sufficient funds to satisfy his financial obligations under the Joint Venture Agreement and the Addendum.  Razipour had enough money to pay Matasco's share of the down payment and the $300,000 for remodeling costs under the Joint Venture Agreement.  Razipour continued to cover construction costs as they spiraled upward, and the Addendum acknowledges that he had contributed $750,000 over and above the purchase money.  In the Addendum, Matasco agreed to pay an additional $150,000 to finish the project, and no evidence was presented that Razipour did not or was unable to make that payment.

Razipour fully performed Matasco's financial obligations under the Joint Venture Agreement and Addendum.  When a contractual relationship is alleged to have been induced by fraud, but the contract is performed by the party who made the

15

misrepresentations, there is no causal connection between the other party's reliance on the misrepresentations and alleged damages. (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1818 ["If the contract had not been performed, we might agree that these expenditures constituted damages proximately caused by the misrepresentations"].)

Thus, the evidence established as a matter of law that the joint venture's failure was not due to Dadvar's reliance on any representations made in the Proof of Funds Letter. Quicken Mortgage's and Dadvar's damages, if any, were due to causes unrelated to the Razipour's financial condition or the correct balance of his certificate of deposit at Bank of America.

### DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

GOETHALS, J.

16